# E. C. BERGH v. JOHN WYMAN FARM LAND & LOAN COMPANY a Corporation.

## (152 N. W. 281.)

**Nonresident plaintiff — security for costs — motion for — reasonable time in which to furnish — dismissal of action — continuance.**

1. Where a nonresident plaintiff fails to furnish security for costs as required by §§ 7812 and 7814, Compiled Laws of 1913, it is not error for the trial court to refuse to dismiss the action for such reason on a motion being made at the opening of the trial, and without other notice, though it would be error to refuse to enter an order, if asked for, ordering a dismissal of the case if such security were not furnished within a reasonable time to be fixed by the court, and for a continuance until such time.

**Jury case — jury waived — trial by court — findings — have same weight and effect as verdict — supported by evidence — conflict in.**

2. Where a jury is waived and the case is tried by the court without a jury, the findings of the trial court have the same weight and effect as those of a jury, and will not be set aside if supported by competent evidence, even though there is a conflict therein.

**Contract — performance — time of statute of frauds.**

3. A contract which may be performed within a year does not come within the provisions of the statute of frauds, and is not required to be in writing.

Opinion filed March 24, 1915.

Appeal from the County Court of Cass County, *Hanson, J.* Action

for damages for breach of a contract of employment occasioned by wrongful discharge. Judgment for plaintiff. Defendant appeals.

Affirmed.

Statement of facts by BRUCE, J.

This is an appeal from a judgment of the county court of Cass county, North Dakota, having increased jurisdiction, and rendered in an action brought by the respondent to recover damages for the breach of a contract of employment to act as foreman in charge of one of appellant's farms, which contract was alleged to have been made about May the 20th, 1911, and presumed to continue until April 1st, 1912, and which respondent claims appellant broke by discharging him on the 1st day of November, 1911. The judgment was for the agreed wages for the months of November and December, 1911, and January, February, and March, 1912, at $75 per month, less the sum of $100 earned by respondent during said period.

*Pollock & Pollock,* for appellant.

This action by plaintiff, a nonresident, should have been dismissed, on defendant's motion, for his failure to furnish security for costs. Such motion cannot be denied and no security required, but the court may determine what reasonable time shall be allowed plaintiff within which to furnish security. Rev. Codes 1905, §§ 7196–7198, Comp. Laws 1913, §§ 7812–7814; Stewart v. Dwyer, 22 N. D. 356, 133 N. W. 990; Cranmer v. Dinsmore, 15 N. D. 604, 109 N. W. 317.

The contract attempted to be shown by the proof of the plaintiff, if such contract could be proved, would be within the statute of frauds. It was oral, and was not to be fully performed before the expiration of fifteen months. Rev. Codes 1905, § 5332, subdiv. 1; Comp. Laws 1913, § 5888; 20 Cyc. 198 B.; Sharp v. Rhiel, 55 Mo. 97; Biest v. Ver Steeg Shoe Co. 97 Mo. App. 137, 70 S. W. 1081; Chase v. Hinkley, 2 L.R.A.(N.S.) 738, and note, 126 Wis. 75, 110 Am. St. Rep. 896, 105 N. W. 230, 5 Ann. Cas. 328.

Plaintiff was discharged from the employment of defendant for good and sufficient cause. An employment, even for a specified term, may be terminated at any time by the employer in case of habitual neglect of duty, or continued incapacity to perform such duty. Rev. Codes

1905, §§ 5567, 5577; Comp. Laws 1913, §§ 6130, 6140; McGregor v.
Harm, 19 N. D. 599, 30 L.R.A.(N.S.) 649, 125 N. W. 885; Von
Heyne v. Tompkins, 89 Minn. 77, 5 L.R.A.(N.S.) 524, 93 N. W. 901;
Armour-Cudahy Packing Co. v. Hart, 36 Neb. 166, 54 N. W. 262;
Posey v. Garth, 7 Mo. 94, 37 Am. Dec. 183; 26 Cyc. 987, 989.

Plaintiff was rightfully discharged and forfeited any balance of com-
pensation that might have been due him.   McGregor v. Harm, 19 N.
D. 599, 30 L.R.A.(N.S.) 649, 125 N. W. 885; Huntingdon v. Claffin,
38 N. Y. 182; Von Heyne v. Tompkins, 5 L.R.A.(N.S) 531—IV.
note.

*Engerud, Holt, & Frame,* for respondent.

The right to require security for costs existed at common law, and
statutes requiring it are merely cumulative.   The remedy is enforced
in different ways in different jurisdictions.   But the principle is the
same everywhere, and such right may be waived by the defendant for
failure to timely and promptly insist upon its exercise.   Robinson v.
Sinclair, 1 Denio, 628; Persse & B. Paper Works v. Willet, 14 Abb.
Pr. 119; Sims v. Bonner, 42 N. Y. S. R. 10, 16 N. Y. Supp. 800;
Shuttleworth v. Dunlop, 34 N. J. Eq. 489; Carpenter v. Aldrich,
3 Met. 58; Trustees of Schools v. Walters, 12 Ill. 154; Courson v.
Browning, 78 Ill. 208; Weeks v. Napier, 33 Ala. 568; Heflin v.
Rock Mills Mfg. & Lumber Co. 58 Ala. 613; Muldoon v. Place, 2 Ariz.
4, 6 Pac. 479; Brazell v. Cohn, 32 Mont. 556, 81 Pac. 341.

The contract here relied upon was not within the statute of frauds.
There was no definite time fixed.   Plaintiff was simply to continue
working at a monthly salary as long as his services were satisfactory.
Justification for discharge cannot be proved under a general denial.
Such a defense raises a new issue which must be pleaded.   Linton v.
Unexcelled Fireworks Co. 124 N Y. 536, 27 N. E. 406; Schreiber v.
Ash, 84 N. Y. Supp. 946; Browne v. Empire Typesetting Mach. Co.
44 App. Div. 598, 61 N. Y. Supp. 126; Hicks v. New Jersey Car-
Spring & R. Co. 22 Misc. 585, 49 N. Y. Supp. 401.

The so-called bill of particulars was fatally defective in failing to
specify the times and places of the alleged acts of misconduct.   Tilton
v. Beecher, 59 N. Y. 176, 17 Am. Rep. 337; Dwight v. Germania L.
Ins. Co. 84 N. Y. 493.

A mere order allowing an amendment to a pleading, unless the plead-

ing is correspondingly amended, is of no effect. The original pleading remains unchanged. Satterlund v. Beal, 12 N. D. 127, 95 N. W. 518; MacLaren v. Kramar, 26 N. D. 244, 50 L.R.A.(N.S.) 714, 144 N. W. 89; Halloran v. Holmes, 13 N. D. 411, 101 N. W. 310; Linton v. Unexcelled Fireworks Co. 124 N. Y. 536, 27 N. E. 406.

BRUCE, J. (after stating the facts as above). It is conceded that the plaintiff was a nonresident. The statute in relation to the filing of security for costs is mandatory in form. It provides that "in cases in which the plaintiff is a nonresident of the state or a foreign corporation, the plaintiff *must,* before commencing such action, furnish a sufficient surety for costs," etc. See § 5597, Rev. Codes 1899, §§ 7196 and 7197, Rev. Codes 1905, and §§ 7812, 7813, Compiled Laws of 1913. The motion for the dismissal for the failure to furnish such security was, it is true, not made until the trial, but the duty to furnish the security was fundamental and obligatory, and if any time was desired or required by the plaintiff in which to furnish the same, he should have applied to the court therefor. The extension in such cases is a matter of favor to the plaintiff and something which he should ask for. He has no right to proceed in the case, and the court has no right to allow him to proceed, without the furnishing of the security. If, therefore, the defendant had moved for a dismissal of the action unless the security should be furnished within a reasonable time, and for a continuance of the action until such time, a denial of such motion would have been palpable error. Cranmer v. Dinsmore, 15 N. D. 604, 109 N. W. 317; Stewart v. Dwyer, 22 N. D. 356, 133 N. W. 990.

Section 7814, Compiled Laws of 1913, being § 7198 Rev. Codes 1905, § 5599, Rev. Codes 1899, however, provides that "an action in which security for costs is required by the last section, and has not been given, shall be dismissed on *motion and notice* by the defendant at any proper time before judgment, unless, in a reasonable time to be allowed by the court, such security for costs is given," and it is one thing to dismiss an action and another to insist upon its continuance for a reasonable time until such security is given. Our conclusion, therefore, is that the court did not err in refusing to dismiss the action for the failure to furnish the security, as no notice had been given prior

30 N. D.—11.

to that made in open court and at the beginning of the trial of the motion to dismiss.

There seems to be no merit in appellant's second contention, that the contract was made on January 6, 1911, and was to cover a period of employment up to April 1st, 1912, that is to say, of fifteen months, and therefore should have been in writing, under the provisions of subdivision 1 of § 5332, Rev. Codes 1905, Comp. Laws 1913, § 5888. The only testimony in relation to the subject is that furnished by the plaintiff and by John Wyman, the president of the defendant land company. Wyman testifies as follows: "He, Bergh, met me on the street and asked me for a job. I told him there might be a vacancy soon and I might decide to give him a job. This was in December, 1910, or the first of January, 1911. I later employed him. At that time there was no agreement made as to what wages were to be paid plaintiff. The understanding was to the effect that it was to be left to me. He was willing to accept whatever I saw fit to pay him. Later I met some people in the neighborhood of Hendrum and wrote him a letter and he went to work for me pursuant to that letter. No further agreement as to wages was made until some time in May or the last of April. There was an agreement that he was to get $75 a month from the 1st of April, during the summer season. That employment was to continue as long as he suited me at $75 per month. There was no definite time. He had already worked for me for quite a while. He was paid at the rate of $30 per month for the time he worked up to the 1st of April, and $75 per month after that. I said nothing to him about employing him for a year. The first talk I had with Mr. Bergh I think was in Fargo in January, 1911. The conversation took place before the letters which are in evidence. The letters were written afterwards when I hired him. January 6th he came in response to these letters. The understanding was that he was to receive $50 a month and as much more if he could do the work. After he had been on the farm three months the question was taken up again. I went out there to talk the matter over with him. I did not at that time state to him that I would be criticized by the stockholders of my company if I allowed him $75 during the winter months. I told him I wanted to keep him. If he was a good man I wanted to keep him by the year. When I got out there he wanted $900 a year, and I could not

stand for that, and said that would be $75 the year around, and I finally consented to give him $30 for the winter months and $75 for the balance of the season as long as he stayed. My original proposition was $50. In this letter I say I will be willing to pay him considerably more providing he is able to earn it. After he had been there three months and I had an opportunity to satisfy myself as to his ability, I agreed to pay him $75 a month if he took $30 for the winter. No sir, as a matter of fact Mr. Bergh did not refuse to accept $30 a month unless I entered into a contract to give him $75 for the whole year." This testimony is borne out by the letters. One dated December 29, 1910, reads as follows: "Kindly let me know at your earliest convenience whether we can depend on you to go to work for us on or about the 1st of March. . . . Now regards to salary, I offered you $50; I will be willing to pay you considerably more, providing you are competent to earn it. I am sure you understand farming thoroughly, but the question in my mind is whether you are a captain so as to manage the hired help, so as to get a fair amount of work out of them for the wages we have to pay them. Furthermore, if everything is satisfactory between us, there is no doubt I will be glad to double your salary, and your position with us may last for a good many years. Would like to hear from you by return mail." On January 3, 1911, Wyman again wrote: "Replying to yours of December 30th, will say that I will be in Fargo all of this week, so if you will come down this week I will be glad to meet you so that we may be able to talk over the matters pertaining to our business. Sooner you come the better it will suit me." Mr. Bergh testified: "In response to these letters I went down to Fargo and to the office of the defendant. I there had a talk with Mr. Wyman with reference to working for the John Wyman Company. Nothing definite was said with reference to the wages which I was to receive. If I could handle the work he would be willing to pay me a good salary. . . . I started to work for the defendant company January 6, 1911. . . . I had further negotiations with Mr. Wyman relative to the time of my employment and the wages which I was to receive about the 20th of May at the Hurley farm. He had come down there for that purpose. I had written him on that subject. I wrote him that I was willing to take $75 per month, $900 per year. . . . He got my letter. We had conversation at that time with

reference to my wages. He asked me what I wanted. I told him $75 per month. He told me that he would give me $75 per month from the 1st of April, 1911, to the 1st of April, 1912, and $30 per month from January 6th, 1911, to April 1st, 1911. He explained this difference in wages in that he was afraid the farm trustees would kick on the payment of more than $30 per month. I did not object to doing that if he hired me until the 1st of April, 1912. I was working for the defendant at this time and continued to work for the defendant. I did the work I was hired to do, and continued to do that work until the evening of the last day of October, 1911. . . . I went to work for Mr. Wyman, January 6th, 1911. There was no agreement made as to wages at that time. I was to receive wages, nothing in particular. He offered me $50 a month. I would not take that. He was willing to pay me that and probably more. Yes, I had been anxious to secure this job. . . . This talk with reference to $75 a month that was agreed upon in the spring was at the Hurley farm. Mr. Wyman was present at that time. Nobody else was present. I asked him for $75 a month. The agreement was to pay me $75 a month. The agreement was that he was going to give me $30 a month from the time I started to April 1st, and from then $75 to April 1st, 1912. He offered me $50 when I went to work for him.

Q. You accepted $30 from January to April?
A. Yes, I was hired to the 1st of April, 1912.

We can come to no other conclusion than that the learned trial judge was correct in concluding the agreement which was sued upon and made the basis for the complaint was made somewhere about the 20th day of May, 1911, or at any rate after the 1st of April, 1911, and that at no time was there any agreement that the employment should last longer than to the 1st of April, 1912, and that part of the consideration for the defendant allowing the plaintiff the sum of $75 per month was that the plaintiff should accept $30 per month from the time at which he had gone to work up to April 1st, 1911, and that the prior agreement was entirely indefinite as to time. Such being the case the provisions of the statute of frauds do not apply.

It is not necessary for us to decide whether the court erred in allowing

the amendment to the answer in this case, and which sought to justify the discharge, nor to consider the point which is raised by the fact that though the amendment was permitted it was never in fact reduced to writing or physically incorporated within the original complaint. See Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518. It is sufficient to say that the evidence which was introduced in support of the defense was far from undisputed or convincing. This is not a trial *de novo*, but one to the court in the place of a jury, and the findings of the trial court must be given the same weight and effect as would be given to those of a jury under similar circumstances. The defense, in short, is far from being conclusively proved, and we see no reason for our overruling the findings of the trial court in relation thereto.

The judgment of the County Court is affirmed.