MERCHANTS NATIONAL BANK OF WIMBLEDON, a Corporation, v. JAMES M. COLLARD and Emma A. Collard, and Anton Fried and Susan Fried.

(157 N. W. 488.)

**Vendor — creditor of — fraudulent transfer — action to set aside — hinder — delay — defraud — findings of fact — conclusions of law — supreme court — trial de novo.**

1. In an action by a creditor of a vendor to set aside alleged fraudulent conveyances of real property upon the ground that such conveyances were made with intent to hinder, delay, and defraud such creditor, the trial court found adversely to plaintiff's contention, and upon a trial *de novo* in the supreme court the findings of fact as well as the conclusions of law of the lower court are in all things sustained.

**Evidence — preponderance of — vendors — hinder — delay — defraud — creditors — facts.**

2. The record discloses by a fair preponderance of the evidence that there was no intent on the part of either the vendors or vendees to hinder, delay, or defraud any of the vendors' creditors. In the light of such facts the case of Paulson v. Ward, 4 N. D. 100, and other similar holdings cited by appellant, are *held* in no way applicable to the case at bar.

**Vendor — creditor of — conveyance — real estate — in payment of claims — volunteer purchaser — position of — fraudulent intent of vendor — knowledge of.**

3. Following Lockren v. Rustan, 9 N. D. 43, *held*, that defendant Fried being a creditor of the vendors, and taking the conveyances in payment of claims

Note.—The right of a creditor to buy property from his debtor in satisfaction of the debt is discussed in note in 36 L.R.A. 335, page 339, taking up the question when the purchaser has knowledge of the intent or effect to defeat other creditors, and saying: "Some cases hold that a creditor preferred, taking property in good faith to secure himself, has the right to hold the property as against other creditors, although he may know that the effect of such transfer was to defeat other creditors; and some of the cases go so far as to hold that in such a case a conveyance will be sustained although the preferred creditor may have known that the debtor intended to defeat other creditors." The cases above seem to incline toward the view of this last statement, and other cases following the same doctrine will be found collated in the note.

See also note in 34 Am. St. Rep. 395, on the knowledge of the vendee of his vendor's fraudulent intent as affecting the validity of the conveyance.

held by him, occupies a more favorable position than a mere volunteer purchaser, and the law would not charge him with fraud, even if to his knowledge the vendors were actuated by such fraudulent intent.

**Conveyance — real estate — fraudulent — creditors — pleadings — answer — averments.**

4. The appellant's contention that the conveyances should be adjudged to be fraudulent and void because of certain alleged fraudulent averments contained in the answer of the respondents, to the effect that they are owners in fee of the lands, and that the vendors have no interest in or lien thereon, is, for reasons stated in the opinion, held untenable.

**Supreme court — trial de novo — trial court — findings of — not controlling — entitled to some weight.**

5. Upon a trial *de novo*, the supreme court in deciding the facts acts independently of the trial court's findings, although such findings when based upon oral testimony are of necessity entitled to and will be given some weight.

**Option contract — property — purchase of — enforcement of.**

6. The contention that Emma Collard, one of the vendors, is entitled to enforce a certain option contract to repurchase the property, *held* not supported by the proof.

Opinion filed February 23, 1916. Rehearing denied April 11, 1916.

Appeal from District Court of Barnes County, *Coffey, J.*
From a judgment in defendant's favor, plaintiff appeals.
Affirmed.

*F. B. Lambert,* for appellant.

The transfers here involved were in fraud of creditors of the vendor and void. Rev. Codes 1905, § 6637; Civ. Code 1877, § 2023; Rev. Codes 1899, § 5052; Comp. Laws 1913, §§ 5849, 5850; Paulson v. Ward, 4 N. D. 100, 58 N. W. 792.

The grantee, at the time of the transfer, had knowledge of the fraudulent intent of the grantor, and such transfer is void for this reason. The grantee's title was tainted with the actual fraud. Fluegel v. Henschel, 7 N. D. 279, 66 Am. St. Rep. 642, 74 N. W. 996; Newell v. Wagness, 1 N. D. 62, 44 N. W. 1014; Lukins v. Aird, 6 Wall. 78, 18 L. ed. 750.

"Any secret reservation in trust for the grantor, not apparent on the face of the papers, but resting wholly in parole, renders the entire transaction void, as against creditors thereby injured." First Nat.

Bank v. Comfort, 4 Dak. 167, 28 N. W. 855; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271.

Such transfers are void for reasons of public policy. Fraud, and secret dealing, and bad faith will destroy all such transactions. Baldwin v. Short, 125 N. Y. 553, 26 N. E. 928; Salemonson v. Thompson, 13 N. D. 182, 101 N. W. 324; Morley Bros. v. Stringer, 133 Mich. 690, 95 N. W. 978; Switz v. Bruce, 16 Neb. 463, 20 N. W. 639; Smith v. Conkright, 28 Minn. 23, 8 N. W. 876; North v. Belden, 13 Conn. 376, 35 Am. Dec. 83; Butts v. Peacock, 23 Wis. 359; Strong v. Lawrence, 58 Iowa, 55, 12 N. W. 74; Burt v. C. Gotzian & Co. 43 C. C. A. 59, 102 Fed. 937; Merchants' & M. Sav. Bank v. Lovejoy, 84 Wis. 601, 55 N. W. 108; Gillespie v. Cooper, 36 Neb. 775, 55 N. W. 302; Thompson v. Bickford, 19 Minn. 17, Gil. 1; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271.

As between the parties, grantor and grantee, the conveyance to defraud creditors is valid. McMinn v. Whelan, 27 Cal. 310; Lawton v. Gordon, 34 Cal. 36, 91 Am. Dec. 670; Ybarra v. Lorenzana, 53 Cal. 197; Frink v. Roe, 70 Cal. 296, 11 Pac. 820; First Nat. Bank v. Eastman, 144 Cal. 487, 103 Am. St. Rep. 95, 77 Pac. 1043, 1 Ann. Cas. 626.

*Knauf & Knauf,* for respondents.

The transaction, as shown by the evidence, related wholly to debts due Fried and secured upon the lands in question. A creditor of the vendor has a right to take a deed of transfer of real estate, and it does not necessarily follow that such transaction is in fraud of the grantor's creditors. There is no finding of fraud in this case. Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Newell v. Wagness, 1 N. D. 62, 44 N. W. 1014; First Nat. Bank v. Comfort, 4 Dak. 167, 28 N. W. 855; Fluegel v. Henschel, 7 N. D. 279, 66 Am. St. Rep. 642, 74 N. W. 996.

It is the application of the law to the facts in any case, that tells the story. Tested by this rule, there is no evidence of fraud, nor any finding of fraud, in this case. Lukins v. Aird, 6 Wall. 78, 18 L. ed. 750; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271; Salemonson v. Thompson, 13 N. D. 182, 101 N. W. 320.

The findings of the lower court are amply sustained by the evidence, and are entitled to be given weight. Horton v. Emerson, 30 N. D.

274, 152 N. W. 529, and cases cited; Bergh v. John Wyman Farm Land & Loan Co. 30 N. D. 158, 152 N. W. 281; State ex rel. Trimble v. Minneapolis, St. P. & S. Ste. M. R. Co. 28 N. D. 648, 150 N. W. 463; Jasper v. Hazen, 4 N. D. 4, 23 L.R.A. 58, 58 N. W. 454; James River Nat. Bank v. Weber, 19 N. D. 705, 124 N. W. 952; Ruettel v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 265, 100 N. W. 717.

FISK, Ch. J. This is an appeal from a judgment of the district court of Barnes county and is here for trial *de novo*.

Plaintiff bank as a judgment creditor of the defendant, James Collard, seeks to set aside and have adjudged void certain alleged fraudulent conveyances of real property executed and delivered by such defendant and his wife, Emma Collard, to the defendants Anton and Susan Fried. The same attorney who brought this action commenced a similar action for the Royal Elevator Company against the same defendants, which action involved the same issues, and by consent of all parties the two actions were consolidated and tried as one action in the court below, but separate findings, conclusions, and judgments were entered in each. No question is raised as to the right of these plaintiffs to maintain such actions, it being conceded or at least not questioned, that they each had, prior to the commencement of the actions, duly acquired a lien by judgment and levy of execution upon any interest held by the Collards in the real property in controversy. The crucial and in fact about the only issue raised by the pleadings is as to whether the deeds from the Collards to the Frieds were void as in fraud of Collards' creditors.

The learned trial court, after hearing the testimony which was practically all oral, resolved such issue in favor of the defendants, and after duly considering such testimony as best we can from the typewritten record, we deem such findings in accord with the preponderance of the evidence, and we adopt them as our findings on this appeal. The record is quite voluminous, and it would serve no useful purpose to attempt a review of the testimony in this opinion, and we shall refrain from so doing.

We, however, deem it proper to here set forth the substance of the findings and conclusions of the trial court. They are as follows:

1. Plaintiff is a domestic corporation.

2. Defendants James M. and Emma A. Collard are husband and wife, each having full authority to represent the other in all the transactions involved herein.

3. That defendants Anton and Susan Fried are husband and wife with like authority of each to represent the other in all such transactions.

4. That on July 16, 1914, plaintiff bank duly recovered and caused to be docketed in Barnes county a judgment by confession against James M. Collard for the sum of $869.79, which judgment is of record and wholly unsatisfied, and which judgment was for an indebtedness incurred more than three years prior thereto.

5. That on or about August 31, 1914, an execution was duly issued on such judgment, and on or about September 2, 1914, the same was returned nulla bona. On September 4, 1914, an alias execution was duly issued, and after indorsing thereon his inability to find any personal property upon which to levy, the sheriff in due form levied upon all the real property in controversy, giving due notice thereof to defendant James Collard, which levy is still in full force.

6. That on June 22, 1911, the Collards, for a good and valuable consideration, executed and delivered to defendant Anton Fried a warranty deed to a portion of the land in controversy, to wit, the west half of the east half of sec. 6, twp. 143, R. 60 in Barnes county, which deed was duly recorded on July 12, 1911. Such deed was given subject to a mortgage for $1,800, and a commission mortgage for $90 running to one Charles H. Smith. At the time this deed was executed and delivered and as a part of the same transaction, defendant Anton Fried gave to the Collards a contract agreeing to reconvey said land to them upon the payment of $4,050, with interest on $1,800 thereof at 7 per cent, and the balance of said sum of $4,050 was represented by a note for $2,250 in favor of Anton Fried. Defendant Collard retained possession of the land under such contract. Thereafter and on August 2, 1913, the Collards transferred by warranty deed the other lands described in the complaint, consisting of three quarters owned by James M. Collard, to the defendant Susan Fried, for an expressed consideration of $1. Such deed contained a covenant that such land was free from encumbrance, except a mortgage to the Middlesex Bank-

ing Company, one to Moore Brothers, and one to Anton Fried. This deed was duly recorded on August 6, 1913. As a part of such transaction the Collards on said date delivered up for cancelation to the Frieds, the contract for the purchase of the quarter first described; the consideration for the surrender of such contract and the giving of the two deeds above described transferring all right, title, and interest to the Collards to the lands described in such deeds, to Anton and Susan Fried respectively, being the agreed price of $30 per acre or a total of $19,200, it being then and there agreed between the defendants that Susan and Anton Fried would assume the encumbrances against said land as a part of the purchase price, and would deduct from such purchase price, in addition to such encumbrances, all accounts owing by the Collards to them or either of them, paying any balance found to be due on such purchase price to James M. Collard. Upon an accounting, it was found that the amount of such encumbrances thus assumed, together with the amount owing on account of Anton Fried, aggregated the sum of $17,418.24, leaving a balance still due on such purchase price of $1,881.76, and that to this extent, with interest thereon at the rate of 7 per cent per annum from the date of such sale, the defendant James M. Collard at the time of the commencement of this action had and ever since has retained an equity in such land, and the Frieds hold title to such land in fee, subject only to such equity in James M. Collard.

7. That by virtue of the execution and levy hereinbefore mentioned the plaintiff has a lien upon all such land for the sum of $80.09, being the balance of Collard's equity aforesaid after satisfying the prior lien held by the Royal Elevator Company, the plaintiff in the companion action, and that upon the payment of such sum, the defendants Anton and Susan Fried respectively shall be adjudged to be the fee owners of such lands, free and clear of all claims asserted by the plaintiff bank.

From the foregoing findings of fact the trial court made conclusions of law to the effect that the plaintiff bank is entitled to judgment against the defendants Anton and Susan Fried for the sum of $80.09, the balance thus due on the purchase price of such land, and that such sum be made a specific lien thereon, and, when paid, the same shall be applied upon the judgment against the Collards. Further, adjudg-

33 N. D.—36.

ing that Anton Fried and Susan Fried respectively are the owners in fee simple of the lands in controversy subject only to the encumbrances of record and the balance thus found to be due on the purchase price, as against this plaintiff, and that when the provisions of this judgment are carried out by the defendants Anton and Susan Fried, the title to such lands shall be adjudged to be in said Frieds respectively in accordance with their deeds, free and clear of all claim made by the other parties to this action.

In the light of the facts thus found by the trial court and which, as before stated, we deem fully established by a preponderance of the testimony, we entertain no doubt as to the correctness of the decision below. The law relative to alleged fraudulent conveyances is too firmly settled to require extended notice, and were it not for the elaborate brief and argument of appellant's counsel wherein he has industriously cited numerous authorities from this and other courts which he strenuously insists are in point and controlling in his favor, we would feel justified in concluding this opinion with a mere statement of our conclusion that the facts disclosed in this record require an affirmance of the judgment. However, in view of counsel's very earnest contentions, we deem it but fair to him and to his clients that we set forth at some length the reasons which impel us to overrule his contentions as to the rules of law applicable to the case.

We freely admit that if the facts were as contended by counsel we would readily agree with him as to the rules of law here applicable. We may say here that we have no quarrel whatever with the rules enunciated in the cases cited. These cases are: Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Fluegel v. Henschel, 7 N. D. 276, 66 Am. St. Rep. 642, 74 N. W. 996; Newell v. Wagness, 1 N. D. 62, 44 N. W. 1014; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271; Salemonson v. Thompson, 13 N. D. 182, 101 N. W. 320; Baldwin v. Short, 125 N. Y. 553, 26 N. E. 928; Morley Bros. v. Stringer, 133 Mich. 690, 95 N. W. 978; Thompson v. Bickford, 19 Minn. 1, Gil. 1; North v. Belden, 13 Conn. 376, 35 Am. Dec. 83; Merchants' & M. Sav. Bank v. Lovejoy, 84 Wis. 601, 55 N. W. 108. These cases no doubt were correctly decided on the facts before the court; but let us briefly distinguish the case at bar from the cited cases. In the case at bar the conveyances attacked were each made for the fair and reasonable value

of the lands conveyed, not only this, but what is of still more vital importance, such conveyances were thus made without any intent either upon the part of the vendors or vendees to defraud any of the vendor's creditors, or to hinder or delay them in the collection of their claims; nor was there any secret trust reserved in such lands for the benefit of the vendors. This is all that need be stated to differentiate the cases; for it will be found, we think without exception, that each of the cited cases was based upon facts showing either a voluntary transfer without consideration, or an intent on the part of the vendor, or on the part of both vendor and vendee, to place the property beyond the reach of the former's creditors, with the fraudulent intent to cheat and defraud such creditors, or to hinder and delay them in the collection of their claims, or that a secret trust was reserved in the vendor with like intent.

Before leaving this branch of the case, we will briefly notice appellant's principal authority—Paulson v. Ward, 4 N. D. 100, 58 N. W. 792,—upon which they so confidently rely as conclusive in their favor upon the proposition that the conveyances in question were fraudulent and void. A cursory examination of the opinion in that case will readily disclose that it is not in point. At page 108 of the opinion it is stated: "There is left little opportunity to doubt the intent on the part of the grantors to hinder, delay, and defraud their creditors. Did the grantee Patterson know of that intent when he took the conveyances? The trial court answers in the affirmative." The opinion goes on to give reasons why the trial court's conclusion was correct, and at the close of the opinion at page 112 they say: "It is clear that he (Patterson, the vendee) participated in the purpose" (to hinder, delay, and defraud the creditors of the Wards and Hall). Manifestly, such case is not an authority in a case like the one at bar, where neither the grantors nor the grantees were actuated by such a fraudulent intent. The same may be said as to each of the other cases cited, and further comment on them would be wholly useless.

The fact that the respondent Fried was a creditor of Collard places him in even a more favorable light than a purchaser who was not a creditor, for even if the record disclosed that Collard, in making the conveyances, was actuated by an intent to defraud some of his creditors, and Fried had knowledge of this, the law would not charge him

with fraud by reason of such knowledge.   Lockren v. Ruston, 9 N. D. 43, 1 N. W. 60.   Chief Justice Bartholomew in speaking for the court in that case, among other things very properly said: "The reasons that have been assigned for the distinction between one who purchases for a present consideration and one who purchased in satisfaction of a pre-existing debt are sound and unassailable.   The former is in every sense a volunteer.   He has nothing at stake,—no self-interests to serve. He may, with perfect safety, keep out of the transaction.   Having no motive of interest prompting him to enter it, if yet he does enter it, knowing the fraudulent purpose of the grantor, the law, very properly, says that he enters it for the purpose of aiding that fraudulent purpose.   Not so with him who takes the property in satisfaction of a pre-existing indebtedness.   He has an interest to serve.   He can keep out of the transaction only at the risk of losing his claim.   The law throws upon him no duty of protecting other creditors.   He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence.   He may know the fraudulent purpose of the grantor, but the law sees that he has a purpose of his own to serve, and, if he go no further than is necessary to serve that purpose, the law will not charge him with fraud by reason of such knowledge."

But as stated above, in the case at bar the record discloses not only that Fried had no knowledge of any such fraudulent intent on the part of the vendors, but, on the contrary, that no such intent was shown either on the part of the vendors or the vendees.   The lands were heavily encumbered, and the Collards were anxious to sell the same and satisfy the indebtedness against it.   A price of $30 per acre, the fair and reasonable value, was agreed upon, or $19,200 for the section, and the aggregate amount of the liens thereon, together with the sum owing to Fried by the Collards which it was agreed should be satisfied out of the purchase price, was approximately $17,319, leaving a balance due Collard from Fried on such purchase price of $1,881, which balance had not been paid.   This balance the trial court held should be apportioned between the plaintiff bank and the Royal Elevator Company, plaintiff in the companion action, according to the priority of their respective liens, and the latter's claim has been fully satisfied.

It is, among other things, now claimed by this appellant that the deeds should be adjudged to be fraudulent and void as alleged in the

complaint, because in their answer the Frieds alleged that they are the owners in fee simple of the lands, and that the same are free from any claim or interest in or lien upon the same in favor of the Collards, later repeating such averments in their affidavit and demand for a release of the levy served upon the sheriff. Attention is called to the fact that these averments were untrue and fraudulent in that, as the trial court found, there was a balance of $1,881.76 still due the Collards on the purchase price for which they are entitled to a vendor's lien. This contention is clearly without merit for at least two reasons: First, fraud which would operate to avoid these conveyances must have existed at the time of and as a part of such transfers, and to be of any avail in this action such fraud, of course, must have taken place prior to the commencement of the action; second, the trial court correctly found that there was no such fraud in fact. It is clear that this balance remained unpaid merely through inadvertence and oversight on the part of Fried's bookkeeper, who testified in effect that in making up the statement as to liens against the property she included all liens of record, and that the item of $1,880 covering the Chas. H. Smith mortgage was thereby inadvertently included when as a matter of fact such indebtedness had been previously included in another form. Her testimony on this point is undisputed. For these reasons we fail to see how appellant's contention on this point has any merit.

In arriving at our conclusion on the facts we deem it proper to state that we do so independently of the trial court's findings; although such findings, being based upon oral testimony, are of necessity entitled to some weight in this court. Counsel for respondent is clearly in error, however, in contending for the rule announced in Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Bergh v. John Wyman Farm Land & Loan Co. 30 N. D. 158, 152 N. W. 281; Semple v. Burke, 26 N. D. 201, 144 N. W. 103; State ex rel. Trimble v. Minneapolis, St. P. & S. Ste. M. R. Co. 28 N. D. 621, 150 N. W. 463; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717, and other like cases, holding to the effect that the findings of the trial court have the force of special findings of a jury. These cases have no relevancy to appeals triable de novo. Jasper v. Hazen was decided long prior to the enactment of the trial de novo statute, and the other cases were not here for trial de novo, but merely for review of errors. The rule as to the weight to be

given by this court to the findings of the lower court in cases for trial *de novo* is stated in Christianson v. Farmers' Warehouse Asso. 5 N. D. 438, 32 L.R.A. 730, 67 N. D. 300, as follows: "The judgment of the trial court upon the facts must still have weight and influence in this court, especially when based upon the testimony of witnesses who appeared in person before that court. It may be that the strong presumption of correctness under which findings of fact came to this court under the former practice does not follow them with equal force under this statute, and it may be that to some extent the appellant is relieved from the burden of pointing out the specific error of the trial court. . . . Nevertheless, the independent judgment of this court upon the record presented, irrespective of what the trial court may or may not have held, is based only upon a review of the record made in the trial court." See also Englert v. Dale, 25 N. D. 587, 597, 142 N. W. 169.

Counsel for appellants finally insists that Emma A. Collard should at least be held to have a right to purchase these lands back from the Frieds under the so-called option contract, exhibit P-1. The contract shown by such exhibit is very ambiguous, and fails to state the terms of the agreement; it merely stating that the Frieds agree to give to Emma A. Collard a crop contract covering these lands, such option being good only for one year from its date,—December 15, 1913. In the light of the record we are unable to hold that Emma A. Collard ever availed herself of the option aforesaid by complying with the terms and conditions thereof, and we are agreed that the learned trial court properly reached its conclusion that the only claim held to these lands by the Collards was and is a claim to the balance of the purchase price remaining unpaid.

For the above reasons the judgment below was correct, and the same is in all things affirmed.