# RANSON COUNTY FARMERS BANK, a Corporation, Appellant, v. C. E. CAVETT, Respondent.

(194 N. W. 388.)

**Appeal and error — unnecessary to make motion for new trial to review sufficiency of evidence, where proper specifications made.**

1. In a trial to the court without a jury where proper specifications of the insufficiency of the evidence are made, it is unnecessary to make a motion for a new trial in order to review the sufficiency of the evidence.

**Banks and banking — bank held not liable for commissions due or moneys loaned by manager of land department, disconnected from operation of bank.**

2. In a suit to recover upon promissory notes, where defendant has set up counterclaims for commissions due to him on land sales and for moneys loaned by him in operating a land department, and where it appears that defendant was appointed manager of such land department by a directors' resolution, which provided that bank funds should not be used in its land department, and where, pursuant thereto, defendant bought and sold lands upon contracts of sale, personally received moneys from purchasers and disbursed the same to original vendors, received notes from purchasers and used some of the same as well as his personal notes in financing such land department, without any showing that the bank received or retained actually any earnings or profits from the conduct of such land department, it is *held*, for reasons stated in the opinion, that the trial court erred in finding that the bank was liable for either commissions due to, or for moneys loaned by defendant.

Opinion filed May 8, 1923.  Rehearing denied June 30, 1923.

Appeal and Error, 3 C. J. § 909 p. 988 n. 44; Banks and Banking, 7 C. J. § 223 p. 589 n. 32.

In District Court, Ransom County, *Allen,* J.

Action upon promissory notes by plaintiff bank.

Defendant set up counterclaims for commissions, expenses, and moneys loaned.

Defendant received judgment for excess of counterclaims over plaintiff's notes.

Plaintiff appealed from the judgment.

Reversed and remanded.

*Lawrence, Murphy & Nilles* and *Ego, Craig & Thompson,* for appellant.

"An agent having general authority to manage his principal's business has by virtue of his employment no implied authority to bind his principal by making, accepting, or indorsing negotiable paper." 21 R. C. L. 870.

"If, however, the agent exceeds his authority, and does acts not within the scope of his agency, he will not be permitted to recover from the principal for money advanced or for liabilities incurred in respect of such unauthorized acts." 21 R. C. L. 835.

"If the transaction of a business carried on by an agent for his principal absolutely requires the exercise by the agent of the power to borrow money in order to carry it on, then such power is impliedly conferred as an incident to the employment; but the fact that the act proposed is more effectual in the transaction of the business provided for does not afford a sufficient ground for the inference of such a power; it must be practically indispensable to the execution of the duties really delegated in order to justify its inference from the original employment. Where it is proved that there was no necessity for an agent to borrow money to effect any purpose of the agency, it will not be presumed, without evidence, that it was proper or usual, in the ordinary course of the business in which he was employed, to borrow money without express authority. Merely placing one in charge of a sales agency of a manufacturing concern with supervision of sales and local agents does not confer the implied power to borrow money for the concern; and it is immaterial that the principal is a corporation." 21 R. C. L. 863.

The question of the agent's implied authority to borrow money is closely associated with that of the execution of negotiable paper as it is through the execution of such instruments that the power to borrow is ordinarily exercised. In this case, as in that, the authority is one reluctantly to be implied. As has been said in a recent case, authority to borrow money is among the most dangerous powers which a principal can confer upon an agent. Whoever lends to one, claiming the right to make or indorse negotiable paper in the name of another, does so in the face of all the danger signals of business. He needs not lend or discount until assured beyond doubt that the principal has, in fact, appointed an agent who by the stroke of a pen, may wipe out his present fortune and bind his future earnings. The very nature of the act

is a warning; and, if the lender parts with his money, he does so at his own peril. If the power was not in fact conferred, he must bear the loss occasioned by his own folly. A power so perilous is not to be implied from acts which, in other matters less hazardous, might create an agency. *It must be conferred in express terms,* or be necessarily and inevitably inferable from the very nature of the agency actually created. So strict is the rule that it will not be presumed even from an appointment of one as general agent, unless the character of the business, or the duties of the agent, are of such a nature that he was bound to borrow in order to carry out his instructions and the duties of the office. 1 Mechem, pp. 722, 723.

"The right of action to recover money paid to the use of another accrues immediately upon the payment, *and not before.*" 27 Cyc. 842.

"The measure of damage in an action for money paid for the use and benefit of another is the sum actually paid by plaintiff." 27 Cyc. 845; Schofield v. State Nat. Bank, 97 Fed. 286, 287.

"Any sort of dealings by way of sale or exchange." Commerce, Traffic; May v. Sloan, 101 U. S. 231, 25 L. ed. 797; Re Pinkney, 47 Kan. 89, 27 Pac. 179; Hetz v. Maier (Tex.) 33 S. W. 710; L.R.A.1917A, pp. 753, 755, 780, 781, 788, 812.

"The enforcement of such right is not in affirmance of the illegal contract but is in disaffirmance of it, and seeks to prevent the city from retaining the benefit which it has derived from the unlawful act." Parkersburgh v. Brown, 106 U. S. 487; Wald v. Wheelon, 27 N. D. 624; Montgomery v. Whitbeck (N.D.) 96 N. W. 529.

"But where the contract is illegal, that is a contract condemned or prohibited by law, or is malum in se, it is not enforceable but is to be regarded as void, for in such cases the corporation does more than perform an act in excess of its corporate powers." Elliott, Contr. ¶ 556; Re Guardian Mut. Fire Ins. Co. 107 Iowa, 143, 70 Am. St. Rep. 149, 77. N. W. 868.

*W. S. Lauder* and *Kvello & Adams,* for respondent.

"The right of action (that is the right of action of the parties suing to recover money paid for the use of another) accrues immediately upon the payment (that is of the payment for the use of another) and not before." 27 Cyc. 842.

"An objection that an action was brought before the cause thereof

accrued, must be pleaded, and the objection must be urged at the trial."
1 Cyc. 475; Mahoney v. O'Leary, 34 Ala. 97; Johnson v. Meyer, 54
Ark. 442; Elder v. Rourke, 27 Or. 363.

"A contract of a corporation that is ultra vires, not because prohibited by positive law, or inherently vicious, and not because the corporation could not, under any circumstances, make the contract, but solely because of the existing circumstances and conditions under which it is made, is never void, and the plea of ultra vires will not avail either party to such contract when the contract has been fully executed by the other party." Tourtelot v. Whited, 9 N. D. 467.

"A loan made by a national bank upon real estate security, although prohibited by United States statute, is voidable, and not void, and the sovereign alone can be heard to object. Its ultra vires nature cannot be pleaded as a defense by the debtor." First Nat. Bank v. Messner, 25 N. D. 263.

"But we would reach no different conclusion even though we should assume that the act of the bank was ultra vires. It is one thing to assert that the bank cannot legally engage in the business of acting as agent, it is an entirely different thing to assert that when it has, in fact, assumed to act as agent, it shall not be held to the ordinary duties and obligations which govern such a relation. A bank may repudiate its promise to act as an agent when such promise is not binding, and in so doing, it will incur no liability. So long as the matter remains executory, it can fall back upon the defense of ultra vires. But a widely different question is presented when it has executed or pretended to execute the agency. So long as the business remains unfinished, the person dealing with the bank must take the risk of the refusal of the latter to proceed. He is bound to know that the act is ultra vires. But it is not a physical impossibility for a bank to act as agent. If it assumes to and does so act, and receives the proceeds of the sale it must account for them as agent. It has undoubtedly violated the law by exercising powers not conferred upon it. But this violation can be taken advantage of only by the sovereign authority which created the bank. . . . Indeed, in many cases this is the rule, although the act performed by the bank is in defiance of a positive statutory prohibition." Anderson v. First Nat. Bank, 5 N. D. 451–455; Bank v. Mathews, 98 U. S. 621; Bank v. Whitney, 103 U. S. 99; Thompson v. Bank, 146 U. S. 240;

Bank v. Birch, 130 N. Y. 221; Mitchell v. Tel. Co. (S. D.) 127 N. W. 582; Building Ass'n etc. v. Chamberlain (S. D.) 56 N. W. 897; 14 C. J. pp. 583, 584; 7 R. C. L. pp. 678–681 and cases cited; 70 A. S. R. 170; 111 A. S. R. 322, (subd. 10); 20 L.R.A. 765; 96 U. S. 258.

"Corporations are presumed to contract within their powers. The doctrine of ultra vires when invoked for or against a corporation should not prevail, where it would defeat the ends of justice or work a legal wrong." Railway Co. v. McCarthy, 96 U. S. 258; Sweeny v. United Underwriters Co. 29 S. D. 576; Ege v. Centerville Teleg. Exch. 33 S. D. 468.

"A banking corporation may acquire title to such note, even though the act of purchase be ultra vires; and unless the law expressly declares the act void the maker cannot interpose the plea of ultra vires as a defense in an action upon the note." Neilsville Bank v. Tuthill, 4 Dak. 295; 10 Cyc. p. 1158; Cases cited in 2 R. C. L. Supp. p. (bottom) 433; Sweeny v. U. S. Underwriters Co. (S. D.) 137 N. W. 379; Bank v. Bank, 15 N. D. 594; Bank v. Bakken, 17 N. D. 224; Bank v. N. W. Lime Co. 28 N. D. 479; Davenport v. Stone, 104 Mich. 521; Merchants Nat. Bank v. Citizens Nat. Bank, 10 Wall. 604; 1 Morse, Banks & Bkg. 5th ed. §§ 160–165.

## Statement.

Bronson, Ch. J. The plaintiff bank brought this action to recover on three notes made by defendant aggregating $5,481.31. Defendant, in counterclaims, set up commissions due, loans made, and expenses incurred, aggregating $4,770.41. Trial was had to the court without a jury. Upon findings, the trial court allowed to plaintiff the amount of the notes with interest, less a certain deduction aggregating $5,538.71; to defendant the counterclaims, for commissions earned and loans made with interest, aggregating $6,243.13. Judgment, accordingly, was entered in defendant's favor for the difference, amounting to $857.43. Plaintiff has appealed therefrom.

The facts are: Plaintiff is a state bank with a capital of $50,000 doing business at Lisbon, North Dakota. Its board of directors adopted a resolution, at the time therein stated, as follows:

"February 1st, 1919, at a special meeting of the board of directors,

at the call of the vice president, P. A. Suhumskie, was held on the above date at 2 o'clock P. M. in the office of the Ransom County Farmers Bank, Lisbon, North Dakota. Present, P. A. Suhumskie, J. B. Casey, L. O. Hatlie, Matt Linzbach, E. K. Savre. Matter of taking the land business up was considered. Motion made and seconded that the bank establish a land department to be operated separately from the bank and that all earnings received from this department be turned into the bank, that the funds of the bank be in no way whatever used in connection with this business as it should be self-sustaining, that G. E. Cavett be appointed to establish agencies wherever he may see fit and make contracts with them, that all land handled through this department to be handled on a commission of $5 per acre, no more and no less, $2 of this flat commission to be the commission of the agent selling the land in case the agent makes the sale and in case the land is sold directly by Mr. G. E. Cavett securing the purchaser he is to receive the commission of $2 per acre. Motion carried, all present voting yes. Motion by Casey, seconded by Savre, that Mr. Cavett be made manager of this department. Carried, all members present voting yes. Motion to adjourn. Carried. M. G. Suhumskie, Acting Secretary."

Defendant was present at this meeting. He accepted the proposal and proceeded to act.

Stationery and cards were secured which displayed this land department and defendant as manager. The names of nonresident landowners were procured from county officials. Land listing contracts were prepared, wherein the bank was designated as agent of landowners, for purposes of land selling. For defendant, in his work, there was made available clerical assistance and, to some extent, the office force in the bank. Although defendant maintained no regular office in the bank, he frequently was there and used the office force and furniture. Thus did the defendant act in this capacity until April 1st, 1921, when he was dismissed. During this time he was also in the employ of the state for a part of the time, doing work for the bureau of education. While manager, defendant purchased and sold, in toto, two sections of land. The purchases were made by contracts for deed running to defendant. These lands were purchased at the following prices per acre: One section, at $60; a half section at $65; another half section at $70. They were respectively sold at an advance of $5 per acre. Four different

sales of these lands are involved, namely, one half-section to Thompson; one quarter-section to R. E. Myers; three quarter-sections to I. L. Myers: one half-section to Davidson. To each of these parties, respectively, was given a partial payment contract of sale, by the bank, signed by defendant as manager. Each of these contracts evidenced a series of notes from $1,000 to $2,000, falling due consecutively for a number of years. At least, upon three of these contracts, an amendment dated March 6th, 1920, was made by defendant personally and the respective purchaser to the effect that in case poor crops made it impossible for the purchaser to complete his contract or to make arrangements to carry it, defendant agreed to take the land back without prejudice and to return payments already made. Defendant received from Davidson $1,000; from I. L. Myers $1,000; from R. E. Myers $500; from Thompson $500; a total of $3,000 in cash. It was necessary for him to have additional money in order to make payments to the original owners of the lands. Accordingly, he borrowed $2,000 from one Lund, his old friend in Iowa. To him he gave as collateral a Davidson note for $1,000, a R. E. Myers note for $1,000, and an I. L. Myers note for $635. Then, he borrowed $3,000 from a bank in Enderlin and gave his note for the amount secured by notes taken on these land deals. Then, he paid $2,000 upon this note, leaving a balance of $1,000 unpaid. Later, in March, 1920, he borrowed $2,800 more from the Enderlin bank and gave a note for the total borrowed, $3,800. He placed as collateral to this note certificates of deposit for $3,000 issued by the plaintiff bank to defendant and a Thompson note for $1,000. These certificates of deposit are dated March 17, 1920. He gave to plaintiff bank a Myers note for $2,000 and a Thompson note for $1,000 at the time when the certificates were issued. He also sold a note to a bank in Nome for $1,000. Thus, in all, he received through cash and loans, $9,800. He paid, in various sums, to original landowners, $11,088.51. The certificates of deposit were eventually paid by plaintiff bank to the Enderlin bank. This left a balance of $800 and interest on the Enderlin note that has not been paid. The $2,000 loan made by Lund has not been paid. Until April 1st, 1921, none of these notes taken in these land deals were turned over to the plaintiff bank or appeared as resources on its books, excepting the two notes given when the certificates were issued to defendant. But on April 1st, 1921, when defendant was dis-

missed he wrote a letter describing his actions and turned over all contracts and notes except those theretofore placed as collateral.

However, in January, 1920, at the annual meeting of the bank's stockholders, defendant made a report by letter to the bank concerning the business of this land department during the preceding year. This letter mentioned the lands hereinbefore referred to. It claimed a profit on land sales amounting to $6,400 of which the bank's commission was $3,840 and defendant's commission, $2,560. It listed expenses in postage and letter heads amounting to $5.12, and discount on two notes amounting to $35. It claimed, accordingly, a net profit to the bank amounting to $3,800.88. The stockholders, through motion made, accepted this report. The bank prepared a statement of its earnings. This statement showed bank earnings, $7,009.84; net earnings of the land department, $3,800.88; total earnings of all departments, $10,810.72. In percentages, of capital stock, the bank earnings were 14.01 per cent; land department earnings, 7.60 per cent. This statement was used in selling bank stock.

Pursuant to defendant's testimony, the bank, through its officers, knew about these land purchases and land sales; defendant explained that the bank at Enderlin needed some collateral and that it did not wish to take any more land notes; accordingly, the bank issued the certificates of deposit; then, he gave to plaintiff the land department notes hereinbefore mentioned, for $3,000; defendant took the certificates and presented them as collateral to the loan of $3,800 at the Enderlin bank. The bank also knew about the loan made from Lund.

Defendant further testified that, at the annual meeting when he was selected as manager, he stated that he was willing to act as manager if he received a commission of $2 per acre and his necessary expenses; during the time he was acting as manager he kept the papers in a private deposit box; the bank officers, however, had another key.

Mr. Suhumskie, vice president, and active officer of the bank, testified that the certificates of deposit for $3,000 were given to defendant as commission on the Myers and Thompson deals; that he did not know what became of these certificates after they were delivered to defendant; that defendant did not tell him about borrowing $3,800 from the bank at Enderlin; that the land notes amounting to $3,000 were taken

and certificates issued for them; that he did not keep track of the details of the land business.

Otherwise, some witnesses for plaintiff testified that there was no agreement to pay defendant's expenses. Defendant also offered proof of his expenses.

The facts, upon this record, must be gleaned from the various contracts, notes, certificates, letters, reports and evidence of the parties. No book record or account of all the proceedings of this land department or of the bank have been presented in the evidence.

The notes upon which suit was instituted represent other personal transactions with defendant. There is no controversy concerning the same upon this appeal. Defendant's counterclaims, accordingly, involve, upon the evidence adduced, commissions claimed of $2 per acre, for the sale of the 1,280 acres mentioned; expenses incurred in connection therewith; the loan of $3,800 ($800 balance) secured from the bank at Enderlin; and a loan of $2,000 secured from Lund in Iowa. The trial court allowed these counterclaims excepting that concerning expenses.

## Issues.

The plaintiff specifies that the trial court erred in admitting certain testimony and exhibits concerning the counterclaims and in making its findings allowing such counterclaims; that the evidence is insufficient to justify the findings so made.

The plaintiff contends that defendant had no authority from plaintiff to borrow money; that the loans made by defendant have not by him been paid; hence he has suffered no detriment and has no right of recovery; that the entire transaction concerns an engagement in real estate transactions which are ultra vires and prohibited by law; that, furthermore, defendant has failed to prove any right to recover commissions from the bank.

The defendant maintains that, since this is an action at law in which no motion for a new trial was made, this court cannot review the sufficiency of the evidence to sustain the findings; that the bank, having deliberately entered into the real estate business, is bound to reimburse defendant for his commissions and his advancements by reason of ben-

efits received and retained by the bank; that defendant never has been paid any amount for commissions earned by him and consequently he is entitled to recover his commission of $2 per acre for all the land sold by him for the bank; that, concerning the loans, the counterclaim is asserted, not to recover money paid out for the use of the bank, but to recover for money loaned by defendant to the bank; that the money, represented by these counterclaims concerning the loans, was paid out by defendant for the bank in its land business: that, concerning the claim of ultra vires, the transactions involved herein are completed transactions. The contract under which defendant seeks to recover his counterclaims is not prohibited by positive law. Accordingly, that the principle of law applies that, the contract having been completed and the bank having appropriated the fruits thereof, it will not be permitted to urge that the contract was ultra vires and therefore void; that the statutory provision prohibiting the employment of bank assets or funds in real estate is a statutory regulation which would permit, for its violation, seizure by the public examiner and a closing of the bank; that there is no statutory regulation prohibiting a bank from borrowing money and, since this land department was created by and belonged to the bank, it was liable to the defendant for the loan made by him to it; that the state might have interposed against this engagement in the land business; but, since the bank was permitted to carry on such business, it would be inequitable to permit the bank now to take advantage of the statute and escape its liability upon a completed contract.

## Decision.

The contention of defendant, that, in a trial by the court without a jury, it is necessary to move for a new trial in order to review the sufficiency of the evidence, merits attention only through its novelty. Before and after the enactment of the Practice Act, Laws 1913, chap. 131, this court has continuously reviewed the sufficiency of the findings by a trial court, where proper specifications concerning the evidence have been made, without any motion for a new trial. Maclaren v. Kramar, 26 N. D. 244, 50 L.R.A.(N.S.) 714, 144 N. W. 85 (an able brief was presented by respondent in the foregoing case on this very question; yet, the judgment was reversed); Feil v. German Farmers Mut. Ins.

Co. 28 N. D. 355, 149 N. W. 358 (in this case, the necessity of specify-ing upon an appeal from the judgment, the insufficiency of the evidence was emphasized); Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366; Bergh v. John Wyman Farm Land & Loan Co. 30 N. D. 158, 152 N. W. 281; Shellburg v. Wilton Bank, 39 N. D. 530, 167 N. W. 721, 723; McCormick v. Union Farmers State Bank, 48 N. D. 834, 187 N. W. 421; Bleeker v. Johnson, ante, 156; 190 N. W. 1010; Botnen v. Eckre, 41 N. D. 514, 171 N. W. 95. In fact, the Practice Act, chap. 131, Laws 1913, in connection with § 7842, Comp. Laws, 1913, plainly so provides. Thus, in appellate procedure as above indicated have the bar and this court so constured the statutes without question.

Is the evidence sufficient to warrant the finding of the trial court that defendant is entitled to recover from the bank $2,560 as commis-sions for selling 1,280 acres of land?

In our opinion, disregarding the question of ultra vires or law prohi-bitions, the contract of the parties and their acts taken thereunder fur-nish the answer.

The contract-resolution specifically provides that this land depart-ment should be operated separately from the bank; that the funds of the bank were to be in no way whatever used in connection with the business, as it should be self-sustaining; that all earnings received from this department should be turned into the bank; that defendant should receive $2 per acre commission in cases where he sold the land directly.

The record clearly discloses that defendant made no demands for any commissions until after he was dismissed as manager.

When he made his report at the stockholder's meeting in January, 1920, all of the land that he did sell while manager was then sold. He then made a list of it. In his report he showed the bank's commissions to be $3,840 and his commissions $2,560. Specifically, in that letter he stated to the bank that he had handled the business on personal credit so as not to draw on the bank for funds; that all commissions bear 6 per cent interest so that any discount would be more than balanced by the time commissions were worked out. In that letter he made no de-mand for any commissions. Furthermore, upon the record it is appar-ent that the notes taken in these land transactions were held by the de-fendant. He used them for purposes of this land department which he was managing. None of these notes were taken into the bank or ap-

peared in the resources of the bank so far as this record discloses excepting the two notes amounting to $3,000, that were given to the bank on March 17th, 1920, when defendant procured from the bank the certificates of deposit for $3,000 for use as collateral in the loan made at the Enderlin bank.

The statement, that the bank issued, showing the net earnings of the land department to be $3,800.88, was entirely a statement on paper showing merely paper profits. At that time when the statement was made or at any other time while defendant was manager, there were in fact no earnings realized in cash or turned over to the bank unless it be considered that the notes turned over by defendant after his dismissal as manager then represented or comprehended bank earnings as well as defendant's commissions.

But, attached to the contracts of sale made by defendant, at least to three of them, was the stipulation that, in case of poor crops which would make it impossible for the purchaser to complete his contract and in case arrangements could not be made to carry the same, defendant agreed to take the land back without prejudice and to return the payments already made. The conditional features of such stipulation requires no discussion. It is evident that the earning of commissions, either for the defendant or for the bank, as well as the permanency of any sale made, was made dependent upon the happening of future events and was indeed speculative. It does appear, under these facts and circumstances, not only that there was no commission that was definitely earned and payable; but also, under the contract and acts of the parties, that there was no intent to fasten any liability upon bank funds for the commissions involved. We are clearly of the opinion that the evidence is insufficient to establish any right of defendant to recover the commissions involved from the bank.

Is the evidence sufficient to establish that defendant loaned to the bank $3,800 ($800 balance) through the transaction had with the Enderlin bank, and $2,000 through the transaction had with his friend Lund in Iowa?

Again we are clearly of the opinion that the contract and acts of the parties furnish a complete answer to this question. The resolution of the board of directors was specific to the effect that bank funds should not be used in this land department. The very fact that plaintiff did

borrow money from his friend Lund and from the Enderlin bank; that he did use cash moneys received from payments made upon land contracts and did sell or pledge land notes; all such acts disclose an intent to abide by this contract relation contained in the resolution. Defendant's letter containing a report to the stockholders in January, 1920, concords with this action thus taken by the defendant in procuring personal loans through which to carry on this department. The further fact, that these notes were not turned into the bank and handled by the bank as a banking transaction so as to float loans to handle this land department, further discloses acts and intent not to engage bank funds in the operation of this land department.

If it be argued that the issuance of the certificates of deposit to defendant and the reception of the two land notes by the bank for such certificates, does evidence, in one instance, at least, the use of bank funds in order to float a loan for this land department, the answer is that this specific relaxation or deviation, if such, from the contract and understanding, did not thereby become a general relaxation or deviation for all other loans that defendant had made for this land department. Defendant is not seeking to recover the $3,000 involved through these certificates. This amount has been paid upon his loan. This transaction affords no basis for an understanding, nor a sufficient basis for an estoppel, that bank funds should be liable for all loans that defendant made or might make in the conduct of such land department.

Accordingly, we are of the opinion that defendant cannot recover from the bank for these loans thus made by him and that, pursuant to the contract and acts of the parties, no principle of estoppel can be invoked which will permit such recovery upon the pleadings and evidence in this case.

Therefore, we are of the opinion that the trial court erred in its findings. The counterclaims of defendant should be dismissed. The findings of the trial court, upon the notes of defendant, in favor of the plaintiff should be and are sustained. The judgment, accordingly, is reversed and remanded for further proceedings and entry of judgment in plaintiff's favor consonant with this opinion, together with costs.

BIRDZELL, JOHNSON, CHRISTIANSON, and NUESSLE, JJ., concur.