(91 N. W. Rep. 37.)

---

JAMES THOMPSON *vs.* WILLIAM ARMSTRONG.

---

**Claim and Delivery—Conditional Sale—Contract—Failure to Record—Attachment.**

Construing section 4732, Rev. Codes: This is a claim and delivery action to recover the possession of a stallion owned by the plaintiff, and delivered by him to one Thomas Creath, upon conditions embodied in a contemporaneous writing, signed by plaintiff and Thomas Creath, which writing was never filed as required by said statute. The writing embraced a contract of conditional sale, and by its terms gave Creath only the naked possession of the stallion until the stipulated conditions were performed, and the title was expressly reserved and continued in the plaintiff until performance. Creath never fulfilled the conditions of the contract, but abandoned the stallion and left the country. The defendant seized the animal as the property of Creath, under an attachment issued by a justice of the peace, and when this action commenced defendant held the stallion under said attachment. At the trial plaintiff put the written contract in evidence, together with oral testimony tending to show that Creath had not complied with the terms of the writing, and had not paid for the stallion. Defendant offered no testimony. On defendant's motion the trial court directed a verdict for the defendant upon the ground that the plaintiff had not made out a prima facie case, inasmuch as the conditional contract had not been filed under said statute. *Held,* that the order directing such verdict was error.

**Pleading and Proof.**

*Held,* further, for reasons stated in the opinion, that the defendant neither alleged nor proved a state of facts bringing the defendant within the benefits of said statute.

Appeal from District Court, Stutsman County; *Winchester,* J.

Action by James Thompson against William Armstrong. Judg-

ment for defendant, and plaintiff appeals. Reversed.

*S. E. Ellsworth,* for appellant.

*Jerome Parks,* for respondent.

WALLIN, C. J. This action was brought to recover the possession of a stallion, which stallion, at the commencement of the action, was in the defendant's possession. The sheriff, under claim and delivery proceedings, took possession of the stallion, and delivered him to the plaintiff, and plaintiff was, at the trial, in possession of the animal. The complaint alleges title in the plaintiff, and plaintiff bases his alleged right of possession upon title and ownership of the stallion. Defendant answered the complaint, denying the plaintiff's ownership, and alleging that one Thomas Creath, at the commencement of the action, was the owner of the stallion. Defendant's answer further states, in substance, that the defendant, before the commencement of this action, had taken possession of the stallion while the stallion was in the possession or under the control of said Thomas Creath; that such possession was taken by defendant as a constable of said county, "under a writ of attachment issued out of the court of John S. Tufford, one of the justices of the peace of said county; and that the defendant was one of the constables of said county, and was at the commencement of this action holding said stallion as the constable to whom the said writ of attachment was directed." Upon these issues the case was tried to a jury, and, after plaintiff had submitted his testimony, and rested his case, counsel in behalf of the defendant moved for a directed verdict, which motion was granted. Upon this feature of the case the record is as follows: "The defendant moves the court to direct the jury to find a verdict for the defendant for the reason that the plaintiff has failed to make a prima facie case for the ownership of the stallion, Prince Wilkes, for which this action is brought, it appearing that said Exhibit A is a contract of conditional sale, and the same not having been filed as required by section 4732 of the Revised Codes of North Dakota. The motion is granted by the court, to which action of the court the plaintiff duly excepts. The court: The motion of the defendant is granted, and the foreman of this jury is directed to sign the verdict presented by the defendant's counsel. To which ruling and direction of the court the plaintiff by his counsel excepts. Thereupon the jury, under the direction of the court as aforesaid, found the following verdict: 'We, the jury, find for the defendant. We find that the defendant was and is the owner of the horse, and entitled to the immediate possession thereof; and that the value of his interest in said horse is three hundred dollars.' To which verdict of the jury and the entry thereof by the court the plaintiff duly excepts." Pursuant to said verdict and an order directing the entry of judgment, the following judgment was entered in the district court: "Wherefore * * * it is ordered and adjudged that the defendant have and recover of and from said

plaintiff the immediate possession of the certain stallion, Prince Wilkes, and described in plaintiff's complaint, or the sum of three hundred dollars, with interest thereon at the rate of seven per cent. from and after the 17th day of January, 1901, besides for costs in this action, the same to be allowed and taxed by the clerk of said court." Error is assigned in this court upon the order granting the motion to direct a verdict, and upon rendering and entering such verdict, and upon the order for judgment and upon the judgment.

The only evidence offered at the trial was introduced by the plaintiff, and, except the testimony of the sheriff upon features of the case not now material, the evidence consisted of the oral testimony of the plaintiff and a certain written agreement signed by plaintiff and Thomas Creath, which is dated June 22, 1900. Plaintiff testified, in substance, that on or about the date of the written agreement he delivered the possession of the stallion to said Creath; that plaintiff next saw the stallion on July 4, 1900, when he was in Creath's possession, and that plaintiff did not see him again until the 2d day of January, 1901. The animal was seized and turned over to plaintiff about January 17, 1901. The testimony tends to show that Creath had abandoned the horse and left the country some time prior to the commencement of the action. The written agreement in evidence is too long to quote at length, but its terms are to this effect: Plaintiff agreed conditionally "to well and truly sell" the stallion to Creath for the price of $600, but such sale was "not to be made" until the conditions named in the writing were fully and completely performed. It was stipulated that immediate possession was to be given Creath, and the animal was turned over to Creath accordingly, but the writing expressly stated that Creath should acquire "no right, interest, lien, or claim to said stallion, except naked possession," until he had fulfilled the agreement according to its terms and stipulations. The writing stipulated that the contract should be fully completed on October 1, 1901; also that on default of any of the covenants of the agreement the plaintiff or his agents "may at any time, at his or their option, declare this contract at an end," and retake possession of the said stallion, and "put an end to this contract in all things, retaining to the party of the first part [plaintiff] any and all payments, benefits, and profits which the party of the second part may make or render to the party of the first part hereunder, collateral to one certain note even date herewith." The writing in general terms required Creath to provide the necessary food for the stallion, to carefully keep and groom and in all respects care for the animal in a proper manner. Also required Creath to keep and stand the stallion for breeding purposes, and to take and turn over to plaintiff all the liens and proceeds derived from breeding the animal to mares, and that such proceeds should be credited on the contract. At the time the stallion was turned over to Creath the plaintiff received from Creath one horse of the agreed value of $100 and two promissory notes, each for the face

amount of $100. At the time of the trial one of the notes had been paid and the other had not been paid. As to the horse and notes, plaintiff testified: "I received two notes and a horse. The face of the notes was $100 each. The estimated value of the horse was $100. It is a fact that I turned the horse over to Creath. He paid two notes and a horse, and turned them over to me. I did not give him credit for $300. I don't credit notes until they are paid. In a sense I gave him credit for the notes. I took possession of them, and exercised ownership over them, and do yet. Have from that day until this." On cross-examination plaintiff testified, referring to Creath, "He did not pay me very near the value of the horse at the time he got him." Plaintiff further testified, in effect, that when he reclaimed possession the stallion, at the market price, was worth $300; but further testified that for breeding purposes the animal was worth more than that amount. This review of the evidence will suffice to show that Thomas Creath had not, at and prior to the commencement of this action, performed or fulfilled the conditions stipulated in the written agreement. He had abandoned the stallion and quit the country. The stallion was not paid for by him as required by the writing, and no part of the purchase price had been paid except as already stated. Upon this state of facts it is manifest that the title to the stallion (which had been expressly reserved to the plaintiff in the writing) was, at the time of the trial, vested in the plaintiff. It follows that at the close of the testimony, and when the verdict for defendant was directed, the plaintiff had made out at least a prima facie case of ownership and right of possession in himself. Upon this state of the evidence the order directing a verdict for defendant was manifestly error, unless some fact not hitherto mentioned justified the order.

The only other testimony or fact in the record which is relied upon as a justification of the order is to be found in the language of the motion for a directed verdict, which has been set out at length, and it is to the effect that the agreement in writing, which is —and, we think, correctly—described in the language of the motion as a "contract of conditional sale," had not been filed as required by section 4732 of the Revised Codes. It is apparant that the order directing the verdict was based upon the omission to file the contract, and in making the order it must have been assumed by the trial court that the plaintiff's failure to file the contract, as against the defendant, operated to vest the title of the stallion in Thomas Creath, and to justify the defendant's seizure under the attachment. But the mere failure to file the contract did not alter its provisions, nor impair any of its obligations. As between plaintiff and Thomas Creath, the title of the horse was vested in the plaintiff until the conditions of the contract were performed, and any omission to file the instrument could not, as between plaintiff and Creath, operate to transfer the title to the latter. It appearing, therefore, from the evidence, that the plaintiff was, and at all times in question had been,

the owner of the stallion, such evidence was entirely sufficient prima facie to entitle plaintiff to recover in the action. Ownership draws to it the right of possession until a better right is made to appear. The plaintiff being the owner, it follows that the defendant's seizure of the stallion by attachment, as the property of Thomas Creath, constituted no defense until the facts necessary to justify the seizure are first established. In this case it became incumbent upon defendant to aver and prove that the defendant was within the benefits of the statute requiring contracts such as that in question to be filed. No such facts were alleged in the answer and no attempt to prove them was made at the trial. Section 4732, Rev. Codes, reads: "All reservations of the title to personal property, as security for the purchase money thereof, shall, when the possession of such property is delivered to the vendee, be void as to subsequent creditors without notice and purchasers and incumbrancers in good faith and for value, unless such reservation is in writing and filed and indexed the same as a mortgage of personal property. In indexing such instruments the register of deeds shall treat the purchaser as mortgagor and the vendor as mortgagee." Defendant does not claim the possession of the stallion upon the ground that he is either a purchaser or an incumbrancer of the animal. If defendant has any rights under the statute, such rights must be based upon a claim that he is a "subsequent creditor without notice," or, if not such, that as an officer he stands in the shoes of a subsequent creditor without notice. The omission to file the contract, as has been seen, does not operate to render the same void in toto, nor void as between the parties to it. Such omission, by the terms of the statute, renders it void only as to certain classes of persons; among others, "subsequent creditors without notice." As to other classes not referred to in the statute, the omission to file is of no consequence. In the case at bar the defendant has not succeeded in placing himself within the class of "subsequent creditors without notice," nor does defendant, by either allegation or proof, show or attempt to show that he represents a subsequent creditor without notice. Under the facts of this case, the contract not being filed, creditors of Thomas Creath who had no notice of the existence of the contract, and who became creditors after the stallion was delivered to Creath, would be in a position, under an attachment issued in an action against Thomas Creath, to seize the stallion as the property of Thomas Creath. But none of these vital facts are alleged in the defendant's answer, and no attempt was made to prove them, or any of them, at the trial. The answer states, in effect, that the defendant had seized and was holding the stallion under an attachment issued out of a justice's court; but this is far from being sufficient. The answer contains no averment that the attachment issued in any action whatsoever, nor does the answer allege that the attachment issued in an action in which a creditor of Thomas Creath was a party, nor that it issued at the instance of any subsequent creditor of Thomas Creath who had

no notice of the existence of the conditional sale contract, and no notice of plaintiff's actual ownership of the stallion. It must follow that the defendant, under the evidence, in attaching the stallion, occupied the position of a wrongdoer. Under the evidence before the trial court the seizure of the animal by the defendant as the property of Thomas Creath was wrongful, and wholly without legal authority. Under these circumstances it was clearly error to direct any verdict in favor of the defendant, and the verdict actually rendered was obviously erroneous in awarding damages in favor of the defendant.

Our conclusion is that the judgent appealed from is erroneous, and the same will therefore be reversed. All concur.