# W. T. GODMAN v. MARTIN OLSON, as Sheriff of Ramsey County, North Dakota.

### (165 N. W. 515.)

**Chattel mortgage — bill of sale — in the form of — properly filed — absence of fraud and deception — not void.**

1. In this case it is *held* that a chattel mortgage in the form of a bill of sale is not void when duly made and filed, without fraud or deception, to secure an honest debt.

On Rehearing.

**Transfer — made in fraud of creditors — question of fact — generally.**

2. Whether a transfer is made in fraud of creditors is generally a question of fact.

**Bill of sale — absolute on face — given as security only — for present indebtedness — future advances — not fraudulent — as a matter of law.**

3. A bill of sale absolute on its face, but given to secure the payment of a present indebtedness and future advances, is not fraudulent as against creditors as a matter of law.

**Possession of property — retention of — by vendor — not conclusive of fraud — merely presumptive.**

4. Under § 7221, Compiled Laws of 1913, the retention of possession of personal property by the vendor is not conclusive, but merely presumptive, evidence of fraud in the transaction.

**Unrecorded chattel mortgage — valid as to persons with actual knowledge.**

5. An unrecorded chattel mortgage is valid as against all persons who have actual knowledge thereof.

**Bill of sale — vendee — other security for debt — fact of — not defense.**

6. The fact that the vendee in a bill of sale, absolute on its face, but given to secure an indebtedness, had other security sufficient to satisfy his demand, is not available as a defense in an action brought by the vendee against an officer who, in disregard and defiance of the vendee's special interest, levies upon and sells some of the chattels covered by such bill of sale.

Opinion filed July 13, 1917. Rehearing denied November 16, 1917.

Appeal from the District Court of Ramsey County, Honorable *C. W. Buttz,* Judge.

Affirmed.

*R. Goer (Cowan & Adamson* and *H. S. Blood,* of counsel), for appellant.

*Henry G. Middaugh* and *Rollo F. Hunt,* for respondent.

ROBINSON, J. This is an action to recover from the sheriff the value of two horses levied and sold under an execution against Richard Godman, the property of the plaintiff. The plaintiff recovered a verdict and judgment for $180. A motion for a new trial was made and denied, and defendant appeals.

The defense was that the horses were duly taken and sold under a writ of attachment and an execution issued from a justice court in an action by Emil Plath against Richard Godman, and that the bill of sale was in fraud of creditors and that the horses were in fact the property of Richard Godman, the defendant in the execution.

The bill of sale was in regular form. It was made to the plaintiff by Richard Godman. It was signed by two witnesses. It was dated, acknowledged, and filed in the office of the proper register of deeds on October 21, 1915. It was made in good faith to secure an actual bona fide debt of about $1,500. It was made subject to a prior mortgage on the same property dated March 25, 1915, for $418.50, due October 1, 1915, and on this the plaintiff had to pay $446.55; he paid hired help $125 and some other debts.

Before the attachment was issued the plaintiff conversed with Emil Plath concerning the bill of sale, and told him it was made to secure $1,500 due and owing to him, and that on a sale of the property any surplus would be paid to the creditors of Richard Godman.

When Emil Plath obtained his judgment he had a legal right to pay the plaintiff and to step into his shoes, but it would have been a losing venture in case Richard Godman had claimed his exemptions.

As the jury found and as the trial judge found, it is clear that the bill of sale was in fact a mortgage, and it was made in good faith to secure an honest debt, and Emil Plath had full notice of the facts. He was not in any manner deceived, and he had a perfect legal right to treat the bill of sale in the same manner as if it were in the regular and usual form of a mortgage. The form did not in any manner de-

ceive or mislead him. The form was adopted at the suggestion and advice of a banker who drafted the paper to secure the debt. Under the statute this bill of sale was in truth a mortgage, and as such it was duly made and filed. Comp. Laws, §§ 6725, 6727, 6729.

This is no case for hairsplitting and it really involves no question of law or of fact. Even if it were not free from doubt, the court should hesitate to reverse the judgment of the trial court and a jury of twelve men, and to award a new trial on a matter of $180. There should be an end to petty litigation.

Judgment affirmed.

## On Rehearing.

CHRISTIANSON, J. Defendant's counsel filed a petition for a rehearing, wherein it was asserted that the statement or conclusion of facts in the former opinion was erroneous, and that the court had failed to consider and decide points raised by appellant and fairly appearing upon the record. A rehearing was ordered, and the cause resubmitted and reconsidered.

While we are agreed that the conclusion reached in the former opinion and the basic principle enunciated therein are, under the facts in this case, correct, we will consider more fully the different propositions advanced.

Plaintiff brought this action to recover from the defendant the value of two horses. In his complaint, plaintiff avers that on or about October 21, 1915, one Richard Godman, the then owner of said two horses, made, executed, and delivered a bill of sale to the plaintiff, covering said two horses and certain other property; that said bill of sale was to secure certain loans made by plaintiff to said Richard Godman and also to secure future advances; that said bill of sale was on October 21, 1915, duly filed for record in the office of the register of deeds of Ramsey county, being the county wherein said property was situated and wherein Richard Godman resided; that on or about November 6, 1915, the defendant, as sheriff of Ramsey county, under a warrant of attachment issued to him in an action then pending in a justice's court in Ramsey county, wherein one Emil Plath was plaintiff and said Richard Godman defendant, seized and levied upon said two horses as the property of said Richard Godman; that at the time of said levy there

was due to the plaintiff from said Richard Godman a sum in excess of $1,500, for which indebtedness said bill of sale stood as security, and which sum is still wholly unpaid; that after the seizure of the horses by the defendant, and while they were still in his possession as such officer, the plaintiff served upon him a notice of demand and affidavit in form as provided by law, stating plaintiff's interest therein, that said sheriff refused and still refuses to deliver possession of the horses to the plaintiff; and that the horses were worth $225. The defendant in his answer admits that he took the horses into his possession under the writ of attachment mentioned in the complaint, and, by way of justification, alleges that the horses were the property of Richard Godman; and that at the time of the execution and delivery of said bill of sale the plaintiff "did then and there agree to convert the said property into cash, with a secret understanding and agreement between them that the surplus that would be in the hands of the plaintiff herein from the sale of said property, over and above the amount required to pay the indebtedness from the said Richard Godman to the plaintiff herein, should be returned to or held for the benefit of Richard God-man." The answer further alleges that the property remained in the possession of Richard Godman subsequent to the execution and delivery of the bill of sale, and was in his possession at the time of the seizure by the defendant; and that consequently the bill of sale was fraudulent and void as to the creditors of said Richard Godman. The case was submitted to a jury, which returned a verdict in plaintiff's favor for $180. Judgment was entered pursuant to the verdict, and defendant has appealed from the judgment and from the order denying his alternative motion for judgment notwithstanding the verdict, or for a new trial.

The evidence shows that the plaintiff and Richard Godman are brothers. Richard Godman was a tenant farmer. He was in debt. His live stock and machinery were mortgaged. He owed various parties, including his hired man. He also owed the plaintiff for moneys loaned. Richard requested further loans from the plaintiff. Plaintiff desired security. They thereupon went to Churchs Ferry and consulted their banker, one Hanson. Hanson advised that the best way to secure plaintiff was to have Richard execute a bill of sale of certain personal property.

The plaintiff testified in part:

Q. You are the plaintiff in this action?

A. Yes, sir.

Q. You are a brother of Richard Godman?

A. Yes, sir. . . .

Q. Whereabouts did your brother Richard Godman live in the months of October and November, 1915?

A. He lived north of Churchs Ferry, probably 4 or 5 miles. . . .

Q. He was in Ramsey County?

A. Yes, sir.

Q. Was your brother a landowner or renter?

A. Renter.

Q. Whose place did he rent?

A. N. O. Sather's.

Q. Was he there during all the season of 1915?

A. Yes.

Q. Did you have any dealings with your brother during the summer of 1915, and prior to the 21st day of October?

A. Yes.

Q. To get down to the point, had you been advancing him money?

A. Yes, sir.

Q. During the spring—how much had you advanced him up until the 21st day of October—what was it at that time in money?

A. Over $1,500.

Q. Was all that money advanced to him?

A. Some of it was for some horses he bought from me to start up with, and the other was money I loaned him. I loaned him money when he first came to this country, in fact to get his family up here. And I bought some machinery for him from Mr. Sylvester at Churchs Ferry, and he had the use of that during the two years he farmed. I also paid up a mortgage and paid off some hired help who were working on the place last summer.

Q. He was unable to pay his help?

A. He couldn't pay the help and kept them longer than he should have kept them, until I raised the money to pay them off with.

Q. About the 21st day of October did you and your brother go down to Churchs Ferry?

A. Yes, sir.

Q. And you went into the bank?

A. Yes, sir.

Q. Mr. Hansen's bank?

A. Yes, sir. .

Q. Did you and your brother go into the rear end with Mr. Hansen?

A. Yes, sir.

Q. Did you tell him what you wanted to do—that Richard wanted to secure you for these advances?

A. Yes, sir.

Q. What did Mr. Hansen say?

A. He suggested that I take a bill of sale—that was good enough for me.

Q. He suggested that?

A. Yes—that would be good enough security.

Q. You asked him how to go about it?

A. We asked him how to fix it up to get security for me for the money I had advanced, and he suggested a bill of sale was good enough for me.

Q. Was a bill of sale drawn?

A. Yes, sir.

Q. And you sent it down for record?

A. Yes, sir.

Q. Now, was there included in that bill of sale these two horse which are described in the notice of levy as one sorrel gelding, tw white hind feet, weight about 1,150 pounds, and one bay mare, white right hind foot, star in face?

A. Yes, sir.

Q. You went to Mr. Olsen yourself and served the notice upon him, and the affidavit?

A. Yes, sir.

Q. You went up and served that yourself?

A. Yes, sir.

Q. After you had it drawn up for you?

A. Yes, sir.

Q. Did you ever get those horses?

A. No, sir.

Q. Or either of them?

A. No, sir, I haven't seen either of them since.

Q. That is, you understood that the sheriff sold them after being indemnified by the plaintiff?

A. Yes, sir.

Q. At the time of this seizure by the sheriff under the attachment you say that Richard Godman owed you in excess of $1,500.

A. Yes, sir.

Q. Has that amount, or any of it, been paid to you since?

A. No, sir.

Q. None of it?

A. No, sir.

Hansen, who was examined as a witness, testified that Richard and the plaintiff came to him on October 21, 1915. Plaintiff wanted to get security for what Richard owed him and be protected for further advances. Hansen suggested that Richard Godman execute a bill of sale to the plaintiff. During the conversation Hansen was informed that there was a chattel mortgage against the property held at a bank in Leeds. Hansen used the telephone and found out the amount. Plaintiff gave Hansen's bank, the First National of Churchs Ferry, a check for the amount then owing on the chattel mortgage, $446.17, and Hansen forwarded it to the Bank of Leeds. Hansen's suggestion with respect to the bill of sale was adopted, and he drew the bill of sale. The bill of sale was immediately forwarded to the register of deeds of Ramsey county for record, and was received by him, and duly filed for record in his office on the day of its execution.

At the time of the execution and delivery of the bill of sale, Richard owed the plaintiff $800 and interest. On that day plaintiff made the further advancement of $162.78 for one of Richard's hired men. Thus plaintiff on the day he took the bill of sale paid off a chattel mortgage for $446.17 and hired help $162.78, making a total of $608.95. And shortly afterwards he advanced $125 more for a hired man. These items aggregate $1,500 or over. Defendant claims that the $125 was not advanced until after the levy had been made. But it is undisputed that the other indebtedness either existed prior to, or came into existence on, October 21, 1915.

The defendant called two witnesses,—Johnson and Sylvester,—who both testified that plaintiff had informed them that he would sell the property covered by the bill of sale at public auction the following spring, and divide the proceeds among the creditors. Defendant also called one John F. Plath, who testified in part:

Q. What is your name?

A. John F. Plath. . . .

Q. You are the son of Emil Plath?

A. Yes, sir.

Q. You are acquainted with W. T. Godman, the plaintiff here?

A. Yes, sir.

Q. And do you recollect any conversation that took place between your father and Mr. Godman, the plaintiff in this action, with reference to your father's claim or bill against Richard Godman last fall?

A. Yes, sir.

Q. When was this?

A. The latter part of October.

Q. The latter part of last October?

A. Yes, sir.

Q. Where was this?

A. That was the Copeland farm.

Q. You may just relate that conversation if you can remember it.

A. Father asked him if he had a bill of sale of Dick's stuff, and he says, "Yes." And father says, "Where will I come in at?" and he says, "I don't know." He says, "We will have a sale in the spring— we will sell it, and I will take the money and divide it among the creditors what there is left."

Q. What did he refer to, do you know, when he said that?

A. Richard Godman's property.

Under our laws "every transfer of property or charge thereon made . . . with intent to delay or defraud any creditor or other person of his demands is void as against all creditors of the debtor." Comp. Laws 1913, § 7220. This does not mean, however, that a debtor is precluded from preferring one or more of his creditors. On the contrary, our laws provide that "a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." Comp. Laws 1913, § 7218. The question whether a transfer is made in fraud of creditors is generally one of fact. Comp. Laws 1913, § 7223. In this case this question was submitted to the jury, and the jury found that no fraudulent intent existed. We have no hesitancy in holding that this find-

ing has ample support in the evidence. In fact, it is difficult to understand how reasonable, fair-minded men could have made any other.

Defendant contends, however, that the bill of sale was void as a matter of law, for the reason that it was accompanied by a secret verbal understanding. In support of this contention it is asserted that the undisputed evidence "shows that the said Richard Godman, by said bill of sale, transferred the property in question, together with all of his other personal property, to the plaintiff; and the said Godman received possession of it under a secret verbal understanding, wherein it was agreed between plaintiff and the said Richard Godman that plaintiff might satisfy the indebtedness of the said Richard Godman to the plaintiff out of the proceeds of said property, and pay over the balance to the other creditors of said Richard Godman;" and "that the plaintiff was holding the property from the judgment debtor Godman, under a bill of sale, absolute on its face, with a secret verbal understanding, making it fraudulent as to the creditors of Richard Godman." Defendant further asserts "that the giving of the bill of sale, with this secret oral reservation, would not make the bill of sale a chattel mortgage or a pledge, nor would the transaction constitute the plaintiff a trustee for the benefit of himself and all of the creditors, nor would it be a transaction preferring the plaintiff as a creditor, but the transaction constituted a transfer of the property of the said Richard Godman to the plaintiff in fraud of creditors."

It is difficult to understand how it can be seriously contended, under the facts in this case, that the bill of sale is void as a matter of law. That a bill of sale absolute on its face will be deemed a mortgage if intended as such by the parties, not only as between the parties, but also as to third persons affected with notice, is too firmly settled to require any extended discussion. See 6 Cyc. 922; 5 R. C. L. pp. 388, 399; Cobbey, Chat. Mortg. § 82. That the bill of sale involved in this case was not intended to operate as an absolute conveyance, so as to vest absolute title in the plaintiff, is undisputed. That the primary purpose of the bill of sale was to secure the payment of plaintiff's claim against Richard is so manifest that it is difficult to understand how this can be questioned. That any secret trust was reserved for the benefit of Richard Godman has not been shown. On the contrary, the testimony of all the witnesses—including defendant's own witnesses—was to the

effect that the surplus, if any, remaining after the payment of plaintiff's claim, should be divided proportionately among the remaining creditors. There is nothing in the transaction of which a creditor can justly complain. "It is sufficient to say," said Chief Justice Morgan (McCormick Harvester Co. v. Caldwell, 15 N. D. 132, 137, 106 N. W. 122), "that a bill of sale absolute in form, but in equity a mortgage, does not render it void as security for present indebtedness or indebtedness to accrue. The fact that a bill of sale or deed absolute in form is given does not of itself make it void as a matter of law. It may be a fact to be considered in connection with other facts, to determine whether the transaction was fraudulent in fact. But standing alone it is not given that effect when the debtor has no rights under it save that of paying his debts, and thereby releasing the property from the lien of the mortgage, and the creditor has no rights thereunder except to hold the property as security."

We have recently considered a case involving the sale of land wherein it was contended that an alleged secret reservation of a portion of the purchase price rendered the instrument void. See Merchants Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488. The authorities principally relied upon by the appellant in this case were cited and relied upon in that case, and what we said with respect thereto in that case is directly applicable here. See Merchants Nat. Bank v. Collard, 33 N. D. 556, 562, 157 N. W. 488. And while the question is not involved here, it may also be mentioned that we recently considered the effect of a secret reservation for the benefit of the vendor. See Petrie v. Wyman, 35 N. D. 126, 147, 159 N. W. 616.

Appellant further contends that the fraudulent character of the transaction is established by the fact that Richard Godman was permitted to retain possession of the personal property covered by the bill of sale. If Richard Godman had executed and delivered a chattel mortgage instead of the bill of sale, it would unquestionably have been proper, and the customary thing, for him to retain possession of the property covered by the mortgage. Under the evidence in this case, the bill of sale was, as between the plaintiff and Richard Godman, intended to perform the same purposes as a chattel mortgage. The other portions of the verbal understanding with respect to the sale and distribution of the surplus among the creditors of Richard Godman were

38 N. D.—24.

not intended for the benefit of either plaintiff or Richard Godman, but rather for the benefit of the other creditors. The only benefit sought to be conferred upon or received by the plaintiff, under the bill of sale, was to secure the debt which Richard Godman owed him. Upon a sale of the property, that was all he was to receive. The surplus, if any, would go to the other creditors.

Appellant, however, contends that under the decision of this court in Newell v. Wagness, 1 N. D. 62, 44 N. W. 1014, the bill of sale must be held fraudulent as a matter of law. That case is not in point. The facts in Newell v. Wagness were summarized by this court in the case of Merchants State Bank v. Tufts, 14 N. D. 238, 244, 116 Am. St. Rep. 682, 103 N. W. 760, as follows: "In that case a bill of sale of a large stock of goods was sold to the plaintiff by a bill of sale absolute on its face. The facts showed that the buyer and seller had secretly agreed that the buyer should dispose of the stock of goods, and turn over the proceeds, after repayment of the plaintiff's indebtedness, to the seller. The necessary and inevitable tendency of that transaction would be to delay the other creditors of the financially embarrassed seller. In the case at bar there was no secret reservation on behalf of the mortgagor, except as to reconveyance after the indebtedness was paid, and that will not avoid the conveyance as constructively fraudulent. As said in Mc-Clure v. Smith, 14 Colo. 297, 23 Pac. 786: 'But if there be a bona fide debt for which the security is given; if there be no understanding with the mortgagee to hold the overplus, or to hold the property after payment of his debt, secretly, for the benefit of the mortgagor; if there be no collusion on the part of the mortgagee with the mortgagor in keeping the defeasance unrecorded, or in keeping secret the exact nature of the transaction, for the purpose of deceiving creditors; in short, if the mortgagee is simply endeavoring in good faith to obtain that precedence in the security of his debt which the law permits,—the mere isolated fact that he takes an absolute deed instead of a mortgage will not, in and of itself alone, render his lien nugatory." The case of Newell v. Wagness is readily distinguishable for another reason. Under our statutes as they existed at the time Newell v. Wagness was decided, the retention by the vendor of the possession of personal property was made conclusive evidence of fraud in the transaction. Comp. Laws 1887, § 4656. This statute was subsequently amended by the legislature, so as to

render the retention of possession by the vendor merely presumptive evidence of fraud. Comp. Laws 1913, § 7221; Drinkwater v. Pake, 33 N. D. 190, 156 N. W. 930; Moores v. Tomlinson, 33 N. D. 638, 157 N. W. 685. In this case the question of fraud was submitted to the jury, and it found that the transaction was not fraudulent. This finding was approved by the trial court on the motion for a new trial. And, as we have already indicated, we are wholly agreed that this finding was correct, and that a finding to the contrary would not have been justified under the evidence.

Appellant also contends that the bill of sale, if intended as a mortgage, was not entitled to record, for the reason that a copy thereof had not been delivered to the mortgagor. It is unnecessary for us to determine whether the record of a chattel mortgage operates as constructive notice, where there is not attached to the original mortgage a receipt showing that the mortgagee has delivered a copy of the mortgage to the mortgagor. That question is not involved in this case. Emil Plath, the attaching creditor, testified that he had actual knowledge of the bill of sale before the attachment was levied. He admits that he was so informed by both the plaintiff and Richard Godman. His son John testified that the plaintiff also informed the attaching creditor of the oral defeasance. It is therefore an undisputed fact that the attaching creditor had full knowledge of all the facts which he could have received by an inspection of the records in the register of deeds' office. An unrecorded chattel mortgage is not involved as between the parties, or as to any person who has actual personal knowledge of its existence. Union Nat. Bank v. Oium, 3 N. D. 193, 44 Am. St. Rep. 533, 54 N. W. 1034; Aultman & T. Machinery Co. v. Kennedy, 114 Iowa, 444, 89 Am. St. Rep. 373, 87 N. W. 435; Loeser v. Jorgenson, 137 Mich. 220, 100 N. W. 450. See also Wm. Deering & Co. v. Hanson, 7 N. D. 288, 75 N. W. 249; Thompson v. Armstrong, 11 N. D. 198, 91 N. W. 39; Merchants State Bank v. Tufts, 14 N. D. 238, 116 Am. St. Rep. 682, 103 N. W. 760; Rock Island Plow Co. v. Western Implement Co. 21 N. D. 608, 132 N. W. 351.

Appellant further contends that plaintiff has sustained no injury by reason of the seizure and sale of the two horses, for the reason that the evidence shows that the property covered by the bill of sale, exclusive of the two horses involved in this litigation, exceeds in value the amount

of plaintiff's claim. In support of this contention appellant invokes the doctrine of marshaling of securities, and quotes the following portion of § 6716, Compiled Laws of 1913, *viz.:* "When one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself or of injustice to other persons, must resort to the property in the following order, *on the demand* of any party interested: 1. To the things upon which he has an exclusive lien."

It is true as a general rule that the holder of a mortgage, or other lien upon or special interest in personal property, is, in an action for conversion of such property, entitled to recover damages only to the extent of the value of such special interest. But it is equally true that such special interest extends to every article of personal property in which such special interest has been granted. Of course, if the article converted exceeds in value the amount of the special interest, the owner of the special interest should be awarded only the amount of his interest; but, if the special interest exceeds the value of the property converted, the owner of the special interest should be awarded the full value of the property. Plath made no demand that plaintiff, if possible, satisfy his claim from the residue of the property. He did not even pretend to levy upon or sell the horses subject to plaintiff's interest therein. He ignored plaintiff's rights, and denied their very existence. The doctrine of marshaling of securities manifestly has no application.

In considering contentions similar to those advanced here, the supreme court of Michigan (Huellmantel v. Vinton, 112 Mich. 47, 88, 70 N. W. 412) said: "The logical result of the defendant's last contention is that, in all cases of levy on a portion of the property covered by a chattel mortgage, the defendant in a suit brought by the mortgagee for conversion by levy and sale upon execution running against the mortgagor would be at liberty to defend on the ground that, while he levied upon and sold a part of the mortgaged property wrongfully, yet, as he had left sufficient to pay the plaintiff's debt, the plaintiff had suffered no injury. In a case like the present he might defend upon the ground that the plaintiff had ample security under another instrument, *e. g.,* a real estate mortgage; although this defense, if allowed, might subject the plaintiff to the annoyance, expense, and delay of foreclosure of such

mortgage, to say nothing of its violation of the rule that the creditor may choose between securities, and avail himself first of one or the other, at his option. In Jones on Chattel Mortgages, 4th ed. § 448, it is said that 'he [the mortgagee] is not obliged to look to the personal responsibility of his debtor, or to show his insolvency before recovery of the wrongdoer. Neither is he required to first look to any other security he may hold.' "

Under our statute the interest of a debtor in property held as a pledge, or subject to a mortgage or other lien, may be levied upon and sold on execution without the officer taking possession of or removing the same. Comp. Laws 1913, § 7721. Plath did not see fit to proceed under this statute. He disregarded it, and proceeded contrary to its provisions. With full knowledge of plaintiff's rights in this property, he intentionally disregarded and challenged the existence of such rights, and sought to secure by a judicial proceeding a preference over all creditors of Richard Godman.

The judgment and order appealed from must be affirmed. It is so ordered.

ROBINSON, J. I affirm original opinion.