R. M. CRICHTON as Trustee in the Matter of Oscar Qualley et al., Respondent, v. OSCAR QUALLEY and Peter Qualley Doing Business as Partners et al., Appellants.

(199 N. W. 858.)

**Fraudulent conveyances — evidence held to sustain finding of lack of change of possession; also to sustain finding of lack of good faith; transferee held entitled to lien for moneys paid on purchase price of property fraudulently conveyed.**

In an action to recover the possession of property transferred in fraud of creditors, it is *held*, for reasons stated in the opinion,—

1. That the findings of the trial court, determining that the transfer was fraudulent and in violation of § 7221, Comp. Laws 1913, and that no actual and continued change of possession of the property occurred, are not clearly opposed to the preponderance of the evidence and are therefore sustained.

2. That the vendee in such transfer, having paid moneys upon the purchase price of a threshing outfit, is entitled, upon principles of subrogation, to a lien for the moneys so paid upon the threshing outfit and to retain the possession of such outfit for such purposes.

Opinion filed April 9, 1924. Rehearing denied July 29, 1924.

Appeal and Error, 4 C. J. § 2853 p. 880 n. 97. Fraudulent Conveyances, 27 C. J. § 297 p. 577 n. 57; § 463 p. 672 n. 39; § 774 p. 825 n. 86; § 781 p. 835 n. 63.

Note.—Necessity of change of possession to sustain transfer of personal property as against creditors, see 12 R. C. L. 560; 2 R. C. L. Supp. 1456.

In District Court, La Moure County, *Wolfe, J.*

Action in claim and delivery to recover property transferred in fraud of creditors.

From a judgment in plaintiff's favor defendants have appealed.

Judgment modified and affirmed.

*William Maloney (Lemke & Weaver,* of counsel), for appellant.

Where there was no intent on the part of either vendor or vendee to hinder, delay or defraud vendor's creditors, the rule of invalidating conveyances where such intent is present is inapplicable. Merchants Nat. Bank v. Collard, 33 N. D. 556.

Under Compiled Laws 1913, § 7221, vendor's retention of possession of personal property is not conclusive, but merely presumptive evidence of fraud in the transaction. Godman v. Olson, 38 N. D. 360.

A creditor taking conveyance in payment of claims, occupies a more favorable position than a volunteer purchaser, and the law does not charge him with fraud, even if to his knowledge vendors had fraudulent intent. Merchants Nat. Bank v. Collard, 33 N. D. 556.

Whether a transfer is made in fraud of creditors is generally a question of fact. Godman v. Olson, 38 N. D. 360.

Where the creditor seeks to set aside an alleged fraudulent transfer, it must appear not only that the debtor fraudulently transferred the same, but also that the transferee co-operated and acted with the debtor to consume the fraud. Bank of Sanborn v. France, 177 N. W. 375.

The vendee may without losing his rights as against the vendor's creditors employ the vendor to manage or assist in the management and care of the property or business which has been sold, his connection therewith being of such character as to hold out no indication of ownership. 27 C. J. § 307, p. 583.

That a transaction as between members of a family will not warrant a presumption of fraud. Stamford v. Langhout, 152 N. W. 612.

Where the undisputed evidence shows that a transfer from a son to his mother was in good faith in payment of a past debt the relationship between the parties did not make the transfer void as in fraud of creditors. Farmers & M. Nat. Bank v. Worden, 155 N. W. 604.

Burden is on party claiming fraud in conveyance from father to son to show it by preponderance of evidence. Ford v. Ott, 156 N. W. 762.

Where a conveyance is attacked by a judgment creditor as fraudulent,

he has the burden of proving fraud. First Nat. Bank v. Mensing; 180 N. W. 58.

*Hutchinson & Lynch,* for respondent.

The matter of fraudulent transfers of personal property has been before the courts many times, and there are a great many decisions. Each case turns upon its own peculiar facts. Our own supreme court has considered a number of such cases, but the two most pertinent and nearest to the facts in the case at bar, are the following: Drinkwater v. Pake, 33 N. D. 190; Klink v. Kelley, 39 N. D. 207; Lockhart v. Edge (S. D.) 167 N. W. 164.

The delivery and possession must be more than technical, but must be such a change of possession that the public will be aware of a change of ownership. Missinskie v. McMurdo (Wis.) 83 N. W. 758.

The vendor remaining in possession is evidence of fraudulent intent. Ashkroft v. Simmons (Mass.) 40 N. E. 171.

Delivery and possession must be open, actual, and unequivocal. It must apprise the world of the change of ownership. Taylor v. Malta Mercantile Co. (Mont.) 132 Pac. 549; Coombs v. Collins (Idaho) 57 Pac. 310.

The jury or court must judge the facts in each case and where there is evidence their findings will not be disturbed. Rapple v. Hughes (Idaho) 77 Pac. 722.

## Statement.

BRONSON, Ch. J. The trustee in bankruptcy seeks to recover certain property transferred in fraud of creditors. Defendants have appealed from a judgment in plaintiff's favor. The facts are:—The defendants are a father and two sons. The father is the owner of a half-section of land near Verona, North Dakota. For years he farmed this land. In 1915, he sold to his two sons the personal property upon the farm consisting of horses, cattle, machinery, etc., for $1,400, for which the sons gave to him a note. The father moved into Verona where he has since resided. Thereafter the boys farmed the land, with the property so purchased, upon the usual cropper's plan. In the course of their farming operations, the boys purchased a threshing outfit. In payment therefor notes for $3,600 were given to a bank. Two of such notes,

amounting to $2,100, the father signed as maker. In November, 1920, the notes for the personal property sold by the father not having been paid and the boys being further indebted to the father, the sons made to the father a bill of sale transferring everything upon the farm including all grain, excepting only their wearing apparel. The father returned to the sons the note for $1,400. The father paid at a bank the notes given for the threshing outfit. He received these notes so paid. The bank endorsed two of the notes, amounting to $2,100 to the father.

The property covered in the bill of sale remained in the possession of the sons. They continued to operate the farm in 1921 and 1922. After the sons purchased this property from the father, they conducted their farming operations as a partnership under the name of "Qualley Brothers." They incurred various obligations as such partnership. After the execution of the bill of sale, they continued to conduct their operations before the public as "Qualley Brothers." They incurred obligations as "Qualley Brothers" and credit was extended to them as such. Pursuant to the testimony of the father and the sons, the arrangement, made after the retransfer through the bill of sale, was that the boys should operate the farm for the father and should be paid going wages for their services; that a loose oral arrangement was made whereby the father furnished them money from time to time as they needed it or demanded it and the boys used or sold the products of the farm for purposes of their needs and in satisfaction of their wages or their living expenses. Thereafter, during the threshing season, the sons operated the threshing rig and collected moneys from farmers for whom they threshed. The original bill of sale, which was roughly written on a sheet of paper, was subsequently incorporated in a bill of sale upon a printed form and included in addition one Minneapolis Steam Tractor Engine which was a part of the threshing outfit. This printed bill of sale recited that it was made to cure defects in the former bill of sale. It was acknowledged on September 26th, 1921. It was filed in the office of the register of deeds on February 19th, 1923. On March 24th, 1923, the sons filed a petition in bankruptcy as a partnership. The schedules in bankruptcy proceedings disclose that the claims of the unsecured creditors are about $4,000, including an in-

debtedness of $750 due the father. No assets were listed excepting a share of stock in an elevator valued at $25, a Ford car, a piano, a shotgun and a violin, all of which were claims exempt, excepting a half interest in the share of stock. One son was a married man. Some evidence was offered to the effect that the sons, after this bill of sale was made, continued to represent themselves to be in the same position as they sustained before the making of the bill of sale. For instance, to one party one of the boys made representations in 1921 to the effect that he did not want to mortgage property on the farm because his brother had an interest in it; also, that they would sell some grain in the fall which would afford them a source of income to pay some debts; also that they represented, concerning the threshing operations, that they could make collections and make payments on their indebtedness. In fact, in the fall of 1922 a bank, through garnishment proceedings collected, from a farmer for whom the sons threshed, a certain amount and credited it on their indebtedness at the bank. There is also evidence in the record that after the bill of sale was made creditors had no notice of the retransfer of the property to the father and extended credit to the boys as "Qualley Brothers." The trustee in bankruptcy, with the consent of the referee, instituted this action in claim and delivery to recover the property transferred. By stipulation the action was tried to the court without a jury. The trial court found in general that the bill of sale was made to the father in order to defeat and defraud the creditors of his sons; that, after the execution of such bill of sale, the sons represented to their creditors during the farming seasons of 1921 and 1922 that the property was theirs and obtained credit upon such representations; that the transfer of such property was made without any transfer of actual possession or manual delivery thereof. As conclusions of law the trial court determined that the bill of sale was void and that the trustee was entitled to judgment for possession of the property. Judgment accordingly was entered granting to the trustee the immediate possession of the personal property upon the farm (not including, however, the grain mentioned in the bill of sale) or, in case a delivery could not be had, to a judgment for its value in the sum of $1,910. Upon this appeal the defendants contend that there is no evidence in the record sufficient to support the findings of the trial court to the effect that the bill of sale was made by the sons in

order to defeat and defraud their creditors, and that the property continued in the possession of the sons.

## Opinion.

The statute provides that every sale made by a vendor of personal property in his possession or under his control, unless the same is accompanied by an immediate delivery and followed by an actual and continued change of possession of the property sold shall be presumed to be fraudulent and void as against creditors of the vendor, unless those claiming under such sale make it appear that the same was made in good faith and without any intent to hinder, delay, or defraud such creditors. Comp. Laws 1913, § 7221. The findings of the trial court will not be disturbed unless clearly opposed to the preponderance of the evidence. State v. Southall, 50 N. D. 723, 197 N. W. 866; Flath v. Bankers' Casualty Co. 49 N. D. 1053, 194 N. W. 741; McCormick v. Union Farmers State Bank, 48 N. D. 834, 187 N. W. 422; Richards v. Northern P. R. Co. 42 N. D. 472, 173 N. W. 778. Upon the record we are satisfied that the question whether the transfer involved was made in violation of the statute is largely a question of fact. Comp. Laws 1913, § 7223; Godman v. Olson, 38 N. D. 360, 165 N. W. 515. The evidence in the record is sufficient to justify a finding of fact that when the bill of sale was executed by the sons to the father, the sons were then in an insolvent condition and so known to be by the father; that, under such circumstances, the sons continued to possess the property transferred by the bill of sale, exercising dominion and apparent right of ownership thereover and securing thereby credit and extensions of credit by reason of their relations continuing apparently the same as formerly. We are not prepared to hold, as a matter of law upon this record, that there was an actual and continued change of possession of the property involved or that the sale was made in good faith and without any intent to hinder, delay or defraud creditors. The findings of the trial court determining that the transfer made was fraudulent and that there was no change of possession are sustained.

However, it appears in the record that the father paid, after the consummation of this transfer and upon the purchase price of the threshing outfit, about $3,600. For such payment so made by him he

should be and is entitled, upon principles of subrogation, to a lien upon such threshing outfit to the extent of the payments so made and to retain the possession of such threshing outfit for purposes of satisfying such lien.   We are therefore of the opinion that the findings and the judgment should be modified so as to grant to the trustee the immediate right of possession of the personal property described in the judgment excepting that the defendant E. P. Qualley shall be entitled to retain the possession of the threshing outfit described in the judgment for purposes of satisfying his lien thereupon; or, that the trustee shall be entitled to the immediate possession of such threshing outfit upon satisfying the defendant E. P. Qualley's lien thereupon, and, further, that the judgment for money, in the alternative, should be reduced in the amount which represents the value of such threshing outfit.   It is accordingly ordered that the cause be remanded to the trial court for entry of judgment consonant with this opinion.

JOHNSON, NUESSLE, and CHRISTIANSON, JJ., concur.

BIRDZELL, J., not participating, through illness.